## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Plaza Mariachi, LLC, | Case No. 3:24-bk-02441 |
| Debtor. | Judge Hon. Charles M. Walker |

## OBJECTION TO MOTION OF FIRST FINANCIAL BANK FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004 DIRECTED TO BANK OF AMERICA, N.A. AND PINNACLE BANK

Plaza Mariachi, LLC (the "Debtor"), debtor and debtor-in-possession, by and through undersigned counsel, hereby objects to the *Motion Of First Financial Bank For Production Of Documents By Various Third Parties Pursuant To Rule 2004* [Dkt. 124] (the "Bank 2004 Motion") filed by creditor First Financial Bank ("FFB"). Pursuant to the Bank 2004 Motion, FFB asks the Court to order non-debtor parties Bank of America, N.A. and Pinnacle Bank (the "Banks") to produce detailed financial information and documents regarding the Debtor and non-debtor parties Auto Masters LLC, Auto Master Sales and Services, Inc., Mahan M. Janbakhsh, Diane Janbakhsh, El Guitarron, LLC, Maz Fresco, LLC, Café Madera, LLC, JMM II, LLC, JMM III, LLC, Tito's Playland, LLC, America's United Financial, LLC, PM Holding Company, LLC, and PM Realty Nashville, LLC (the "Guarantors"), all of which are guarantors of the FFB debt. To the extent that the Bank 2004 Motion requests detailed financial information and documents related to the Guarantors, as opposed to the Debtor, it is an improper attempt to harass the Debtor's principal and the other Guarantors and obtain financial information that FFB otherwise is

1

not allowed to ask for or receive, under applicable Tennessee state law, before obtaining a judgment. Therefore, the Court should either deny the Bank 2004 Motion in its entirety, or limit the requests solely to documents and financial information of the Debtor. In further support of this objection, the Debtor states as follows:

1.　　On July 1, 2024, (the "Petition Date"), Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.　　The Debtor remains in possession of its property and is managing its affairs as a debtor-in-possession. No Trustee, examiner, or committee of unsecured creditors has been appointed.

3.　　The Debtor is a single asset real estate debtor within the meaning of 11 U.S.C. § 101(51B).

4.　　The Debtor, a real estate holding company, owns two separate legal parcels, one commonly referred to as Plaza Mariachi, and one commonly referred to as The Shops at Plaza Mariachi, located at 3955 Nolensville Pike, Nashville, TN 37211 (collectively, the "Property").

5.　　The Debtor leases the Property to a non-debtor affiliate, PM Realty Nashville, LLC, pursuant to a Master Lease Agreement, dated January 27, 2016. The term of the lease is 40 years and does not expire until 2056.

6.　　Recent appraisals of the Property establish value in the range of $18,000,000 - $20,000,000.

7.　　The Property is subject to a number of liens, but the Debtor has substantial equity in the Property.

2

8.     As of the petition date, First Financial Bank, N.A. ("FFB") was owed approximately $8,203,639.37 secured by a first position Deed of Trust, Assignment of Rents and Security Agreement, dated September 29, 2015, of record at Instrument 20151109-011375, as amended.

9.     Each of the Guarantors guaranteed the FFB debt.

10.    FFB does not have a judgment against any of the Guarantors.

11.    In the Bank 2004 Motion, FFB's states that: "The production of documents, as requested herein, is necessary for FFB to determine whether there are valid grounds for recovering any asset transfers between the Debtor and Guarantors, which were likely made through accounts held at either or both of the Third-Party Respondents [Banks]." *See* Bank 2004 Motion at p. 3, ¶ 10.

12.    As stated above, the Debtor is a real estate holding company. Its sole asset is, and always has been, the Property. Prior to this case being filed the Debtor had but rarely used a bank account. All payments on the Debtor's secured debt were made ny non-debtor PM Realty Nashville, LLC.

13.    The Debtor has never transferred any assets to any of the Guarantors.

14.    Despite its pretext for filing the 2004 Motion, FFB is not asking for the production of documents evidencing any asset transfers from the Debtors to the Guarantors. FFB seeks the following discovery from the Banks:

1.   Copies of all financial statements of **Debtor or Guarantors** for the calendar years 2020 through subpoena response date. [Dkt. 124-1].

3

This request should be limited to the Debtor – there is no legitimate basis for FFB to

request that the Banks produce financial statements for the Guarantors.

2. Copies of all profit and loss or income statements of **Debtor or Guarantors** for the calendar years 2020 through the subpoena response date. [Dkt. 124-1].

This request should be limited to the Debtor – there is no legitimate basis for FFB to

request that the Banks produce profit and loss or income statements for the Guarantors.

3. Copies of all financial statements of **Debtor or Guarantors** for the calendar years 2020 through subpoena response date. [Dkt. 124-1].

This request should be limited to the Debtor – there is no legitimate basis for FFB to

request that the Banks produce financial statements for the Guarantors.

4. All documents identifying all assets in which **Debtor or Guarantors** has an interest and the location of said assets. [Dkt. 124-1].

This request should be limited to the Debtor – there is no legitimate basis for FFB to

request that the Banks produce documents regarding the Guarantors' assets.

5. To the extent not already produced, all documents which reflect or related to the income, expenditures, investments or financial status of **Debtor or Guarantors** for any time between January 1, 2020 through the subpoena response date, including but not limited to, federal, state and local tax documents, federal, state and local tax returns and W-2 forms, bank statements, loan applications or documents, financial analyses, balance sheets, audit reports, profit and loss sheets, check registers, stock certificates, accounting documents, budgets and correspondence relating to any of the foregoing. Where applicable, provide copies of any accountant(s)' certification letters attached to the appropriate copy when prepared or submitted. [Dkt. 124-1].

This request should be limited to the Debtor – there is no legitimate basis for FFB to

request that the Banks produce documents, financial statements, or any other financial

information of the Guarantors.

6. To the extent not already produced, all documents dated on or after July 1, 2020, including payment histories, bank statements, checks and deposit slips, that show, evidence or reflect all payments or consideration of any kind between Debtor and Guarantors, or any of them. [Dkt. 124-1].

This request should be limited to the Debtors. There is no legitimate basis for FFB to seek documents regarding any payments made by and among the non-debtor Guarantors.

7. To the extent not already produced, all documents dated on or after July 1, 2020, that show, evidence or reflect any written agreements between Debtor or Guarantors, or any of them. [Dkt. 124-1].

This request should be limited to the Debtors. There is no legitimate basis for FFB to seek documents regarding any agreements by and among the non-debtor Guarantors that do not involve the Debtors.

8. To the extent not already produced, all documents, including, without limitation, email and attachments, that refer to or evidence any conversations or communications by and between Debtor and Respondent or Guarantors and Respondent, from July 1, 2020 to the subpoena response date, including, but not limited to, message slips, office logs, telephone message slips, electronic mail, calendar entries, facsimiles, correspondence, memoranda, handwritten notes, and any audio, video or digital recording of any oral communications. [Dkt. 124-1].

This request should be limited to the Debtors. There is no legitimate basis for FFB to seek documents regarding any communications between these two Banks and the non-debtor Guarantors.

15. FFB is asking the Court to allow FFB to circumvent Tennessee state law (Tennessee Code Ann. § 16-15-712 and related statutes) and conduct judgment debtor's examinations of each of the Guarantors without ever having obtained a judgment.

16. Bankruptcy Rule 2004 may not be used to conduct prejudgment financial discovery regarding the assets and liabilities of non-debtor third parties when such

5

discovery is unrelated to the debtor's financial condition, the administration of the bankruptcy estate, or other permissible purposes under the rule. Courts have consistently emphasized that Rule 2004 examinations are limited in scope and cannot be used as a general discovery tool to investigate non-debtor third parties' private affairs or to pursue claims unrelated to the bankruptcy estate.

17. Rule 2004 examinations are broad but not unlimited. They are designed to assist in uncovering the nature and extent of the bankruptcy estate, identifying assets, and examining transactions that may affect the administration of the estate. However, courts have held that the rule does not permit inquiries into matters unrelated to the debtor's financial condition or the administration of the estate. For example, in *In re Underwood*, the court stated that "the use of a 2004 examination is not permitted for matters not related to the financial condition of a debtor or the debtor's estate." *In re Underwood*, 457 B.R. 635, 645 (Bankr. S.D. Ohio 2011) *citing In re DeShetler*, 453 B.R. 295, 301 (S.D. Ohio 2011) (2004 examination cannot be used for the purposes of abuse and harassment).

18. Courts have explicitly rejected the use of Rule 2004 as a tool for prejudgment discovery into the private financial affairs of non-debtor third parties. In *In re J & R Trucking, Inc.,* the court denied a motion for a Rule 2004 examination where the movants sought to identify third parties who might be liable for the debtor's obligations. The court criticized the attempt to transform Rule 2004 into a "private collection device for creditors" and emphasized that such inquiries must relate to the debtor's financial condition or the administration of the estate. *In re J & R Trucking, Inc.*, 431 B.R. 818, 823 (Bankr. N.D. Ind. 2010).

6

19.     The Bank 2004 Motion clearly exceeds the scope of Rule 2004 and was filed for an improper purpose.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order either denying the Bank 2004 Motion in its entirety, or alternatively, limiting the request to any documents evidencing or relating to documents in the possession of the Bank regarding the Debtor's accounts or financial information related to the Debtor, and denying the Bank 2004 Motion to the extent it seeks financial information or documents relating to the non-debtor Guarantors.

Respectfully Submitted,

Plaza Mariachi, LLC, Debtor-in-Possession

By:    /s/Todd A. Burgess, Esq.
    Todd A. Burgess (AZ SBN 019013)
    (Admitted *pro hace vice*)
    Janel M. Glynn (AZ SBN 025497)
    (Admitted *pro hace vice*)
    THE BURGESS LAW GROUP
    3131 E. Camelback Road, Suite 224
    Phoenix, AZ 85016
    Tel. 602-806-2100
    Email: todd@theburgesslawgroup.com
    Email: janel@theburgesslawgroup.com
    *Bankruptcy Counsel for the Debtor*

    Sean C. Wlodarczyk (TN SBN 30410)
    EVANS, JONES & REYNOLDS, PC
    401 Commerce Street, Suite 710
    Nashville, TN 37219
    Email: Swlodarczyk@ejrlaw.com
    *Local Counsel for the Debtor*