# EXHIBIT A

**Plan of Reorganization**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Plaza Mariachi, LLC, | Case No. 3:24-bk-02441 |
| | Judge Hon. Charles M. Walker |
| Debtor. | |

## PLAN OF REORGANIZATION DATED JULY 28, 2025

This Plan of Reorganization (as hereafter amended, the "**Plan**") is proposed by Plaza Mariachi, LLC (the "**Debtor**"), debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Bankruptcy Case**"). The Effective Date of the Plan is defined herein.

## ARTICLE 1. DEFINITIONS.

Except as otherwise provided in this Plan, all terms used herein shall have the meanings attributable to such terms under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "**Bankruptcy Code**"), the applicable Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Middle District of Tennessee (the "**Local Bankruptcy Rules**"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require. Whenever the word "including" is used, it shall be deemed to be followed by the phrase "but not limited to," whether or not such phrase appears in the text.

1.1     <u>Administrative Expense</u> shall mean any cost or expense of administration of the Debtor's chapter 11 case allowable under section 503(b) and section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of the business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses of Professional Persons, including Professional Fee Claims, and any fees or charges assessed against the estate of the Debtor under Chapter 123 of Title 28 of the United States Code.

1.2     <u>Affiliates</u> shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.3     <u>Allowed</u> when used as an adjective preceding the words "Claim" or "Claims" shall mean (a) any Claim against the Debtor that has been listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, and any other Claim against the Debtor for which a proof of claim has been filed by the applicable Bar Date, in each case as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Rules, or as to which any objection has been interposed timely and such Claim has been allowed in whole or in part by a Final Order (but only to the extent so allowed), and (b) any Claim allowed hereunder.  Subject to rights of Secured Creditors under Bankruptcy Code § 506(b), if any, unless otherwise specified in the Plan, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim from and after the Petition Date.

1.4     <u>Assets</u> shall mean the aggregate assets of any kind of the Debtor and its Estate, wherever located.

1.5    <u>Avoidance Actions</u> shall refer to and mean all Claims and/or causes of action of the Debtor or its Estate under sections 543, 544, 545, 546, 547, 548, 549, 550, et seq. of the Bankruptcy Code, or under related state or federal statutes and common law, including but not limited to fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Actions, including but not limited to all potential causes of action identified in sections 3(b) and (c) of the Debtor's Statement of Financial Affairs filed in the Case.

1.6    <u>Ballot</u> shall mean the form(s) distributed to creditors holding claims in an impaired Class, or holders of interests in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

1.7    <u>Bankruptcy Code</u> or <u>Code</u> shall mean the Bankruptcy Reform Act of 1978 (11 U.S.C. sections 101, *et seq*.), as amended, and as codified in Title 11 of the United States Code.

1.8    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Middle District of Tennessee having jurisdiction over the Debtor's chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. section 158, the unit of such District Court constituted pursuant to 28 U.S.C. section 151.

1.9    <u>Bankruptcy Rules</u> shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 11 U.S.C. section 2075, and also referred to as the Federal Rules of Bankruptcy Procedure.

1.10    <u>Bar Date</u> shall mean the dates set forth in the Bar Date Order entered by the Bankruptcy Court by which all proofs of claim must be filed.

1.11    <u>Bar Date Order</u> shall mean the *Order Granting Debtor's Motion for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* entered at Docket 64.

1.12    <u>Business Day</u> shall mean and refer to any day except Saturday, Sunday, and any other days on which commercial banks in Tennessee are authorized by law to close.

3

1.13    Capital One shall mean and refer to Capital One, National Association, a creditor of the Debtor.

1.14    Cash shall mean legal tender of the United States of America or equivalents thereof, as well as any and all foreign currencies.

1.15    Case shall mean the Debtor's case under Chapter 11 of the Bankruptcy Code currently pending before the Bankruptcy Court.

1.16    Claim shall mean a claim against the Debtor as defined in section 101(5) of the Bankruptcy Code; including but not limited to any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.17    Claimant shall mean the holder of a Claim.

1.18    Class shall mean a class of holders of Claims or Equity Security Interests described in Article III of the Plan.

1.19    Collateral means any property or interest in property of the Estate of the Debtor, subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

1.20    Committee shall mean any statutory committee appointed in the Case pursuant to Bankruptcy Code § 1102.

1.21    Confirmation shall mean the entry of the Confirmation Order.

1.22    Confirmation Date shall mean the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

4

1.23    <u>Confirmation Hearing</u> shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.24    <u>Confirmation Order</u> shall mean an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.25    <u>Creditor</u> shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.26    <u>Debtor</u> shall mean Plaza Mariachi, LLC, a Tennessee limited liability company, the debtor herein.  With respect to any period of time after the Effective Date, the term Debtor, as used herein shall mean and include the Debtor as reorganized under and in accordance with the confirmed Plan.

1.27    <u>Disallowed Claim</u> shall mean a Claim or portion thereof that: (i) has been disallowed by a Final Order; (ii) is listed in any of the Debtor's Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of claim was not filed by the Bar Date; or (iii) is not identified in the Debtor's schedules and as to which no proof of claim has been filed or been deemed filed by the Bar Date.

1.28    <u>Disclosure Statement</u> shall mean and refer to the disclosure statement filed by the Debtor as required pursuant to section 1125 of the Bankruptcy Code, as the same may be amended from time to time.

1.29    <u>Disputed Claim</u> shall mean any Claim that is not an Allowed Claim or a Disallowed Claim and that has not been barred or otherwise disallowed or paid or otherwise satisfied.  In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtor and the holder thereof agree otherwise; provided, however, nothing in this definition is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code.  Without limiting

5

any of the foregoing, but subject to the provisions of the Plan, a Claim, including a Claim listed on the Debtor's Schedules, that is the subject of a pending application, motion, complaint, objection or any other legal proceeding commenced or filed by the Debtor seeking to disallow, limit, subordinate or estimate such Claim shall be deemed to constitute a Disputed Claim.

1.30 <u>Effective Date</u> shall mean the earlier of (a) the first Business Day after the Confirmation Order becomes a Final Order; and (b) if an appeal or other challenge to the Confirmation Order has been taken or may timely be taken, but such order remains in full force and effect and has not been stayed, and the date that the Debtor waives the condition "to the Effective Date" stated in section 15.1 and files a notice of occurrence of the Effective Date on the docket, whether or not the Confirmation Order has become a Final Order.

1.31 <u>Entity</u> shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.32 <u>Equity Security</u> shall have the meaning set forth in section 101(16) of the Bankruptcy Code and "<u>Equity Security Holder</u>" shall have the meaning set forth in section 101(17) of the Bankruptcy Code.

1.33 <u>Equity Security Interest</u> means the interest of an Equity Security Holder in the applicable Debtor.

1.34 <u>Estate</u> shall mean the estate of the Debtor created in accordance with section 541 of the Bankruptcy Code.

1.35 <u>Estate Claims</u> shall mean any and all claims, actions, causes of action, liabilities, obligations, rights, damages, judgments, demands, defenses, suits, choses in action and all other rights and remedies of the Debtor and its Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, including but not limited to any and all claims and/or causes of action by the Estate and/or the Debtor, against any and all Creditors, Governmental Units, or other Persons, including but not limited to any and all claims the

6

Debtor may have against its current or former officers, directors, managers, members, shareholders, employees, consultants, attorneys, and other professionals, of every kind or nature, whether known or unknown, suspected or unsuspected, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, and whether or not brought as of the Effective Date, including but not limited to those for (i) damages, (ii) the recovery of monies, (iii) alter ego, lien avoidance, subordination, substantive consolidation, surcharge, recharacterization, setoff, counterclaim, contribution, recoupment, or veil piercing (iv) tax refunds, (v) claims and defenses such as fraud, mistake, duress and usury, (vi) injunctive, equitable or other relief, and (vii) all Avoidance Actions of the Estate.

      1.36   <u>Executory Contract and Unexpired Lease</u> or <u>Executory Contract</u> or <u>Unexpired Lease</u> shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

      1.37   <u>FFB</u> shall refer to and mean First Financial Bank, N.A., a creditor of the Debtor.

      1.38   <u>Final Order</u> shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as entered on the docket that (a) is not stayed, (b) has not been reversed, modified or amended, and (c) as to which the time to appeal, petition for certiorari, or seek reargument, review, reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under Rule 60(b) of the Federal Rules of Civil Procedure and the time to request revocation of an order of confirmation under section 1144 of the Bankruptcy Code) has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal (including a motion for relief from a final order or judgment under said Rule 60(b) or a request for revocation of an order of confirmation under said section 1144) or as to which any right to appeal, petition for certiorari or seek reargument, review, reconsideration, rehearing or leave to appeal has been waived in writing, or, if any

appeal, petition for certiorari, or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or seek further reargument, review reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under said Rule 60(b) and the time to request revocation of an order of confirmation under said section 1144) has expired.

1.39    General Unsecured Claim shall refer to and mean every Unsecured Claim against the Debtor that is not a Penalty/Default Interest Claim.

1.40    Governmental Unit shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

1.41    Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Equity Security Interests," shall mean that the Plan alters the legal, equitable, or contractual rights of the Claims or Equity Security Interests in that Class, other than in a manner that comports with section 1124(2) of the Bankruptcy Code.

1.42    Insider shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

1.43    IRS shall mean the Internal Revenue Service, Department of the Treasury of the United States of America.

1.44    Lien shall have the meaning assigned to such term in section 101(37) of the Bankruptcy Code.

1.45    Penalty/Default Interest Claims shall refer to and mean all Claims asserted by any person or entity for any type of penalty, default interest, late charges, fines, or similar charges.

1.46    Person shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

8

1.47    Petition Date shall mean July 1, 2024.

1.48    Plan shall mean this plan of reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.49    Plan Sponsor shall refer to and mean PM Realty Nashville, LLC, a Tennessee limited liability company.

1.50    Plaza Mariachi Anchor Space shall refer to and means the approximately 32,800 square foot commercial property (all real property and improvements) located at 3955 Nolensville Pike, Nashville, TN and legally described as Lot 5 Elysian Plaza Sub Resub of Lots 4 & 5, owned by the Debtor.

1.51    PM Master Lease shall mean and refer to that certain triple net Master Lease Agreement, dated as of January 27, 2016, pursuant to which the Debtor, as landlord, leases The Plaza Mariachi Shopping Center located at 3941-3955 Nolensville Pike, Nashville, Davidson County, TN 37211 to PM Realty Nashville, LLC, as tenant.

1.52    PM Realty shall refer to and mean PM Realty Nashville, LLC, the Plan Sponsor, tenant under the PM Master Lease, and a guarantor of the FFB and Capital One secured debt.

1.53    Priority Claims shall mean "Priority Tax Claims" and "Priority Non-Tax Claims" in the aggregate, and shall mean any claim to the extent entitled to priority in payment under sections 507 (3), (4), (5), (6), (7) or (8) of the Bankruptcy Code.

1.54    Priority Non-Tax Claims shall mean Priority Claims other than Priority Claims entitled to priority treatment as a tax under section 507(a)(8) of the Bankruptcy Code.

1.55    Priority Tax Creditor shall mean a Creditor holding a Priority Tax Claim.

9

1.56    Priority Tax Claim shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.57    Professional Persons shall mean any professional employed in the Chapter 11 Case pursuant to section 327 or section 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to sections 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

1.58    Professional Fee Claim shall mean any claim by a Professional Person as provided for in sections 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code.

1.59    Pro Rata shall mean, with respect to an amount of Cash to be paid or distributed to a Creditor with respect to an Allowed Claim on a particular date (a) within the same Class, the proportion that an Allowed Claim in the Class bears to the sum of all Allowed Claims and Disputed Claims within such Class, and (b) among different Classes to which Cash is to be distributed pro rata, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims in the applicable Classes.

1.60    Reorganized Debtor shall mean the Debtor as reorganized under and in accordance with the confirmed Plan from and after the Effective Date.

1.61    Representative shall mean, with respect to any entity, any officer, director, affiliate, manager, member, subsidiary, attorney, advisor, investment banker, financial advisor, accountant or other professional of such entity, in each case in such capacity, together with each of their successors and assigns.

1.62    Schedules means the schedules of assets and liabilities, schedules of current income and current expenditures and the statements of financial affairs filed by the Debtor as required by the Bankruptcy Code and Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date

10

1.63    Secured Claim shall mean a Claim (a) which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.  In accordance with section 506(a) of the Bankruptcy Code, Secured Claim specifically excludes that portion of a Claim of a holder of a Lien against the property of the Debtor to the extent that the value of such holder's interest in the property is less than the amount of such Claim.  To the extent of any deficiency in the value of the interest of the holder of such Secured Claim in such property, such deficiency is an Unsecured Claim, unless otherwise provided for by order of the Bankruptcy Court.

1.64    Subordinated Claim means (i) any Penalty/Default Interest Claims, (ii) any other Claim that is subject to subordination under section 510 of the Bankruptcy Code, and (iii) any other Claim for a fine, penalty, forfeiture, multiple, exemplary or punitive damages, or otherwise not predicated upon compensatory damages, and that would be subordinated in a chapter 7 case pursuant to section 726(a)(4) of the Bankruptcy Code or otherwise.

1.65    The Shops at Plaza Mariachi shall refer to and means the approximately 32,900 square feet of retail shops (all real property and improvements) located at 3941 Nolensville Pike, Nashville, TN and legally described as Lot 4 Elysian Plaza Sub Resub of Lots 4 & 5 (Parcel 133, Map 145), owned by the Debtor.

1.66    Unsecured Claim shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen before the Petition Date for the Debtor, and which is not (i) a secured claim pursuant to section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code.  "Unsecured Claims" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

1.67　　Voting Class shall mean a Class of Claims under the Plan, which is impaired and entitled to vote to accept or reject the Plan.

## ARTICLE 2.　INTERPRETATION, RULES OF CONSTRUCTION, AND OTHER TERMS.

2.1　　Any term used in this Plan that is not defined herein, whether in Article I or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction used in the Bankruptcy Code.

2.2　　The words "herein," "hereto," "hereunder," and others of similar importance, refer to the Plan as a whole and not to any particular article or clause contained in this Plan.

2.3　　Unless specified otherwise in a particular reference, a reference in this Plan to an article is a reference to that article of this Plan.

2.4　　Unless otherwise provided for, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

2.5　　For purposes of this Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.

2.6　　In addition to the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.

2.7　　In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.8　　Any exhibits or schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Bankruptcy Court.

2.9     Where Claims are divided into subclasses in this Plan, each subclass will be considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

## ARTICLE 3. <u>CLASSIFICATION OF CLAIMS AND INTERESTS.</u>

3.1     <u>General Classification Provisions.</u>  For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Priority Tax Claims) and Equity Security Interests shall be classified as set forth in this Article III of the Plan.  All Claims and Equity Security Interests are classified under the Plan as hereafter stated in this Article III; provided, however, that a Claim or Equity Security Interest will be deemed classified in a particular Class only to the extent that the Claim or Equity Security Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Equity Security Interest qualifies within the description of such different Class.  As of the Confirmation Hearing, any Class of Claims or Equity Security Interest that does not contain any Creditor's Claim or an Equity Security Interest will be deemed deleted automatically from the Plan; and any Class of Claims or Equity Security Interest that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) or Equity Security Interest will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.  A Claim or Equity Security Interest is in a particular Class only to the extent the Claim or Equity Security Interest is an Allowed Claim or Allowed Equity Security Interest as defined herein.

3.2     <u>Classification of Claims and Equity Security Interests.</u>  The Plan classifies Claims and Equity Security Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Equity Security Interests are impaired or unimpaired.  The Plan provides the

treatment each Class will receive under the Plan. In accordance with the requirements of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not set forth in Classes and are not entitled to vote on the Plan. The following table designates the Classes of Claims against and Interests in the Debtor and specifies which Classes are (i) Impaired and Unimpaired under this Plan, (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject this Plan:

| **Class** | **Type of Claim or Interest** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Impaired | Yes |
| Class 2 | Secured Tax Claims | Impaired | Yes |
| Class 3 | FFB Secured Claim | Impaired | Yes |
| Class 4 | Capital One Secured Claim | Impaired | Yes |
| Class 5 | Other Secured Claims | Impaired | Yes |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Penalty/Default Interest Claims | Impaired | Yes |
| Class 8 | Equity Security Interests | Not Impaired | No (deemed to accept) |

## ARTICLE 4. **IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLASSES.**

4.1     Administrative Expense Claims and Priority Tax Claims are not classified under the Plan and are not entitled to vote on the Plan. Equity Security Interests are not impaired under the Plan, and are deemed to accept.

4.2     All other classes of Claims are impaired by the Plan and therefore are entitled to vote to accept or reject the Plan, provided, however, that for the purposes of section

1129(a)(10) of the Bankruptcy Code, such acceptance or rejection shall be determined without regard to votes cast by Insiders.

4.3     In the event of a controversy as to whether any Claimant or Class of Claimants is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy.

4.4     The Debtor shall provide all Claimants entitled to vote with a form of Ballot approved by the Bankruptcy Court to be used in casting a vote on the Plan.

## ARTICLE 5. <u>PROVISIONS FOR TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN.</u>

5.1     <u>Administrative Expense</u>.  Every Creditor holding an Allowed Administrative Expense Claim against the Debtor will be paid, in full satisfaction of their Allowed Claim: (a) fully and in Cash on the Effective Date if the Claim is then an Allowed Claim; (b) fully and in Cash within ten (10) Business Days after the entry of an order Allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date; or (c) as otherwise agreed in writing by the Creditor holding the Allowed Administrative Expense Claim and the Reorganized Debtor.  "Allowed Administrative Expense Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim from and after the Petition Date.  Requests for allowance and payment of Administrative Expenses must be filed and served no later than thirty (30) days after the Effective Date.  Administrative Expense Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Administrative Expense Claims.

5.2     <u>Objections.</u>  Notwithstanding any other provision of the Plan to the contrary, any objections to motions or applications seeking the allowance and payment of Administrative Expense Claims, including Professional Fee Claims, must be filed and served within the normal time limits established by the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Procedure for the Middle District of

Tennessee, or as otherwise ordered by the Bankruptcy Court. The Debtor shall be entitled to object to any Administrative Expense Claim.

5.3 <u>U.S. Trustee Fees</u>. All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date, or as due in the normal course of billing and payment. The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The Reorganized Debtor shall file with the Bankruptcy Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee and provided to the Reorganized Debtor, and shall pay such quarterly fees as become due for each quarter post-confirmation that the case remains open. No motion or application is required to fix fees payable to the Clerks' Office or the Office of the United States Trustee, as those fees are determined by statute.

5.4 <u>Priority Tax Claims</u>. Priority Tax Claims are certain pre-Petition Date unsecured income, employment and other taxes described by section 507(a)(8) of the Bankruptcy Code. Holders of Allowed Priority Tax Claims will be paid in full and in cash (i) within five (5) years of the Petition Date through regular equal monthly installments of principal and interest. Priority Tax Claims will be allowed in the principal amount of the tax due as of the Petition Date, with interest at the applicable statutory rate in accordance with section 511 of the Bankruptcy Code. No amounts attributable to penalties imposed or sought to be imposed by holders of Priority Tax Claims will be paid. Priority Tax Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Priority Tax Claims.

**ARTICLE 6. <u>TREATMENT OF CLAIMS IMPAIRED UNDER THE PLAN.</u>**

6.1 <u>Class 1 (Priority Non-Tax Claims).</u> Class 1 consists of all Priority Non-Tax Claims against the Debtor. Holders of Allowed Priority Non-Tax Claims will be paid in full satisfaction of their Allowed Claim: (a) fully and in Cash on the Effective Date if the

Case 3:24-bk-02441   Doc 136-1   Filed 07/28/25   Entered 07/28/25 19:04:20   Desc
Exhibit A (Plan  of Reorganization)   Page 17 of 51

Claim is then an Allowed Claim; (b) fully and in Cash within ten (10) Business Days after the entry of an order Allowing the Claim, if the Claim is not an Allowed Claim as of the Effective Date; or (c) as otherwise agreed in writing by the Creditor holding the Priority Non-Tax Claim and the Reorganized Debtor. "Allowed Priority Non-Tax Claim" shall not, for any purpose under the Plan, include interest on such Priority Non-Tax Claim from and after the Petition Date. No amounts attributable to penalties imposed or sought to be imposed by holders of Priority Non-Tax Claims will be paid. Priority Non-Tax Claims are impaired pursuant to the Plan and votes to accept or reject the Plan will be solicited from Creditors holding Priority Non-Tax Claims.

6.2    Class 2 (Secured Tax Claims).    Class 2 consists of all Secured Tax Claims against the Debtor. Each Secured Tax Claim will be placed in a separate subclass under Class 2 of the Plan. Every holder of a Class 2 Secured Tax Claim shall retain its Lien in its prepetition Collateral. Every holder of an Allowed Class 2 Secured Tax Claim shall be paid in full and in cash (i) within five (5) years of the Petition Date through regular equal monthly installments of principal and interest, or (ii) at the closing of any sale of the Collateral securing such Secured Tax Claim. Secured Tax Claims will be allowed in the principal amount of the tax due as of the Petition Date, with interest at the applicable statutory rate from the Effective Date in accordance with section 511 of the Bankruptcy Code. No amounts attributable to penalties imposed or sought to be imposed by holders of Secured Tax Claims will be paid. Upon the payment in full of the Allowed amount of each Class 2 Secured Tax Claim, the statutory Lien securing such Claim shall be deemed extinguished. Class 2 Claims are impaired under the Plan, and the holders are entitled to vote to accept or reject the Plan.

6.2.1    Class 2.1 (3941 Nolensville Pike).    Class 2.1 consists of Secured Tax Claim No. 1-1 filed by Metropolitan Government of Nashville & Davidson County Tennessee.

6.2.2    Class 2.2 (3955 Nolensville Pike).    Class 2.2 consists of Secured Tax

17

Claim No. 2-1 filed by Metropolitan Government of Nashville & Davidson County Tennessee.

6.3     Class 3 (FFB Secured Claim).  Class 3 consists of the Secured Claims of FFB against the Debtor.  Each FFB Secured Claim shall be placed in a separate subclass under Class 3 of the Plan.  FFB shall retain its Liens in its Collateral post-petition to the same extent, validity and priority as such Liens attached to the Collateral as of the Petition Date. Such Liens shall remain in full force and effect until the Allowed amounts of the FFB Secured Claims have been paid in full in accordance with this Plan.  The FFB Secured Claims are determined to be over-secured within the meaning of 11 U.S.C. § 506(b), such that FFB shall be entitled to recover its reasonable attorneys' fees and costs incurred after the Petition Date in an amount to be determined by the Court or as may be agreed to in writing by FFB and the Reorganized Debtor.  The FFB Secured Claims shall accrue interest from and after the Effective Date on the principal balance at the rate of 7.5% per annum. The Reorganized Debtor shall make monthly payments of principal and interest to FFB based on a thirty (30) year amortization, commencing on the first day of the month following the Effective Date of the Plan and continuing on the first day of each month thereafter for a period of up to thirty-six (36) months or until the Allowed amount of the FFB Secured Claims are paid in full, whichever occurs first.  The unpaid principal balance of the Allowed FFB Secured Claim, together with all accrued and unpaid interest and any other amounts allowed under § 506(b), shall be paid in full no later than the 3rd anniversary of the Effective Date of the Plan.  All payments shall be applied first to accrued interest, then to principal, and finally to any other allowed fees, costs, or charges.  The Reorganized Debtor may prepay the Allowed FFB Secured Claims, in whole or in part, at any time without premium or penalty.  No amounts attributable to late fees, default interest or other penalties imposed or sought to be imposed by holders of FFB Secured Claims will be paid under Class 3.  Any portion of the FFB Secured Claims that constitute Penalty/Default Interest Claims shall be classified and paid, if Allowed, under Class 7 of the Plan.    In the

18

event of a material default in the payments or obligations required under this Plan, and the failure to cure such default within sixty (60) days after written notice of default from FFB, FFB shall be entitled to exercise any and all rights and remedies available under applicable non-bankruptcy law, including foreclosure of its liens on the Property, subject to any applicable notice and cure provisions under state law and this Plan. Upon the payment in full of the Allowed amount of each Class 3 FFB Secured Claim, the Lien securing such Claim shall be deemed extinguished, and FFB shall record all termination statements, releases and deeds of reconveyance to evidence the termination and release of all FFB Liens. The Class 3 FFB Secured Claims are impaired under the Plan, and the holders are entitled to vote to accept or reject the Plan.

6.3.1 <u>Class 3.1 FFB Secured Claim (Loan 1295).</u> Class 3.1 consists of the FFB Secured Claim related to FFB Loan 1295.

6.3.2 <u>Class 3.2 FFB Secured Claim (Loan 1400).</u> Class 3.2 consists of the FFB Secured Claim related to FFB Loan 1400.

6.4 <u>Class 4 (Capital One Secured Claim).</u> Class 4 consists of the Secured Claim of Capital One against the Debtor. Capital One shall retain its Liens in its Collateral post-petition to the same extent, validity and priority as such Liens attached to the Collateral as of the Petition Date. Such Liens shall remain in full force and effect until the Allowed amounts of the Capital One Secured Claim has been paid in full in accordance with this Plan. The Capital One Secured Claim is determined to be over-secured within the meaning of 11 U.S.C. § 506(b), such that Capital One shall be entitled to recover its reasonable attorneys' fees and costs incurred after the Petition Date in an amount to be determined by the Court or as may be agreed to in writing by Capital One and the Reorganized Debtor. The Allowed amount of the Capital One Secured Claim shall accrue interest from and after the Petition Date on the principal balance at the rate of 7.5% per annum. The Reorganized Debtor shall make monthly payments of principal and interest to Capital One based on a thirty (30) year amortization, commencing on the first day of the month following the

19

Effective Date of the Plan and continuing on the first day of each month thereafter for a period of up to thirty-six (36) months or until the Allowed amount of the Capital One Secured Claim is paid in full, whichever occurs first. The unpaid principal balance of the Allowed Capital One Secured Claim, together with all accrued and unpaid interest and any other amounts allowed under § 506(b), shall be paid in full no later than the 3rd anniversary of the Effective Date of the Plan. All payments shall be applied first to accrued interest, then to principal, and finally to any other allowed fees, costs, or charges. The Reorganized Debtor may prepay the Allowed Capital One Secured Claim, in whole or in part, at any time without premium or penalty. No amounts attributable to late fees, default interest or other penalties imposed or sought to be imposed by holders of Capital One Secured Claim will be paid under Class 4. Any portion of the Capital One Secured Claim that constitutes Penalty/Default Interest Claims shall be classified and paid, if Allowed, under Class 7 of the Plan. In the event of a material default in the payments or obligations required under this Plan, and the failure to cure such default within sixty (60) days after written notice of default from Capital One, Capital One shall be entitled to exercise any and all rights and remedies available under applicable non-bankruptcy law, including foreclosure of its liens on the Property, subject to any applicable notice and cure provisions under state law and this Plan. Upon the payment in full of the Allowed amount of the Class 4 Capital One Secured Claim, the Lien securing such Claim shall be deemed extinguished, and Capital One shall record all termination statements, releases and deeds of reconveyance to evidence the termination and release of all Capital One Liens. The Class 4 Capital One Secured Claim is impaired under the Plan, and the holders are entitled to vote to accept or reject the Plan.

6.5     Class 5 (Other Secured Claims). Class 5 consists of any Secured Claims against the Debtor other than the Secured Claims in classes 2-4. Each Other Secured Claim will be placed in a separate subclass under Class 5 of the Plan. Each holder of an Other Secured Claim shall retain its Liens in its Collateral post-petition to the same extent,

20

Case 3:24-bk-02441   Doc 136-1   Filed 07/28/25   Entered 07/28/25 19:04:20   Desc
Exhibit A (Plan  of Reorganization)   Page 21 of 51

validity and priority as such Liens attached to the Collateral as of the Petition Date. Such Liens shall remain in full force and effect until the Allowed amounts of the Other Secured Claim has been paid in full in accordance with this Plan. The Other Secured Claims are determined to be over-secured within the meaning of 11 U.S.C. § 506(b), such that each holder of an Other Secured Claim shall be entitled to recover its reasonable attorneys' fees and costs incurred after the Petition Date in an amount to be determined by the Court or as may be agreed to in writing by the holder of the Other Secured Claim and the Reorganized Debtor. The Other Secured Claims shall accrue interest from and after the Petition Date on the principal balance at the rate of 7.5% per annum. Every holder of an Allowed Class 5 Other Secured Claim shall be paid in full and in cash (i) within three (3) years of the Petition Date through regular equal monthly installments of principal and interest, or (ii) at the closing of any sale of the Collateral securing such Other Secured Claim. All payments shall be applied first to accrued interest, then to principal, and finally to any other allowed fees, costs, or charges. The Reorganized Debtor may prepay any Allowed Other Secured Claim, in whole or in part, at any time without premium or penalty. No amounts attributable to late fees, default interest or other penalties imposed or sought to be imposed by holders of Other Secured Claims will be paid under Class 5. Any portion of an Other Secured Claims that constitutes Penalty/Default Interest Claims shall be classified and paid, if Allowed, under Class 7 of the Plan. In the event of a material default in the payments or obligations required under this Plan, and the failure to cure such default within sixty (60) days after written notice of default from the holder of the Other Secured Claim, the holder of the Other Secured Claim shall be entitled to exercise any and all rights and remedies available under applicable non-bankruptcy law, including foreclosure of its liens on the Property, subject to any applicable notice and cure provisions under state law and this Plan. Upon the payment in full of the Allowed amount of each Class 5 Other Secured Claim, the Lien securing such Claim shall be deemed extinguished, and the holder shall record all termination statements, releases and deeds of reconveyance to evidence the

21

termination and release of all Liens.  The Class 5 Other Secured Claims are impaired under the Plan, and the holders are entitled to vote to accept or reject the Plan.

      6.5.1  <u>Class 5.1 (Liberty HVAC & Energy Services, LLC, Claim 4-1).</u> Class 5.1 consists of the Other Secured Claim filed by Liberty HVAC & Energy Services, LLC, Claim 4-1.

      6.5.2  <u>Class 5.2 (Liberty HVAC & Energy Services, Inc., Claim 5-1).</u> Class 5.2 consists of the Other Secured Claim filed by Liberty HVAC & Energy Services, Inc., Claim 5-1.

      6.5.3  <u>Claim 5.3 (Mid-South Maintenance of TN, Inc., Claim 7-1).</u>  Class 5.3 consists of the Other Secured Claim filed by Mid-South Maintenance of TN, Inc., Claim 7-1.

  6.6  <u>Class 6 (General Unsecured Claims).</u>  Class 6 consists of all General Unsecured Claims against the Debtor.  Holders of Allowed Class 6 General Unsecured Claims will be paid in full and in cash on or before the 3rd anniversary of the Effective Date through equal quarterly installments of principal and interest.  The Debtor shall maintain an appropriate reserve for all Disputed Class 5 General Unsecured Claims, until all such Disputed Class 5 General Unsecured Claims become Allowed Claims or are disallowed by a Final Order.  No amounts attributable to late fees, default interest or other penalties imposed or sought to be imposed by holders of General Unsecured Claims will be paid under Class 6.  Any portion of a General Unsecured Claims that constitutes Penalty/Default Interest Claims shall be classified and paid, if Allowed, under Class 7 of the Plan.  Class 7 Claims are impaired under the Plan, and the holders are entitled to vote to accept or reject the Plan.

  6.7  <u>Class 7 (Penalty/Default Interest Claims).</u>  Class 7 consists of all Penalty/Default Interest Claims against the Debtor.  Class 7 Claims are Subordinated Claims under the Plan.  The Class 7 Claims are subordinated pursuant to sections 105 and 510 of the Bankruptcy Code and this Plan.  Section 510(c) allows the court to "under

22

Case 3:24-bk-02441   Doc 136-1   Filed 07/28/25   Entered 07/28/25 19:04:20   Desc
Exhibit A (Plan  of Reorganization)   Page 23 of 51

principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c)(1). No interest will be paid on Allowed Class 7 Claims. No payments will be made to holders of Allowed Class 7 Claims until the date (the "**Priority Payment Date**") that all of the following Claims have been paid in full: (i) all post-petition fees and expenses incurred by the Reorganized Debtor in the Claim administration process, (ii) all Allowed Administrative Expense Claims and Allowed Priority Claims, and (iii) all Allowed Class 1-6 Claims. Holders of Allowed Class 7 Claims will be paid fully and in cash no later than the 3rd anniversary of the Priority Payment Date through equal quarterly installments. Class 7 Claims are impaired under the Plan, and the holders are entitled to vote to accept or reject the Plan.

      6.8    <u>Class 8 (Equity Security Interests).</u> Class 8 consists of all Equity Security Interests in the Debtor. All holders of Equity Security Interests will retain their interests in the Debtor in the same priority and percentage as prior to the Petition Date. Class 8 Equity Security Interests are unimpaired under the Plan and are deemed to accept the Plan.

## ARTICLE 7. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS.

      7.1    <u>Impaired Classes to Vote.</u> Each impaired class of Creditors with Claims against the Estates shall be forwarded a ballot and shall be entitled to vote to accept or reject the Plan.

      7.2    <u>Acceptance by a Class of Creditors.</u> A Class of Creditors shall be deemed to have accepted the Plan if the Plan is accepted by at least (i) two-thirds (2/3) in the aggregate dollar amount and (ii) more than one-half (1/2) in number of the Claims of such class that have voted to accept or reject the Plan.

7.3    <u>Blank Ballots.</u>  Any Ballot which is executed by the Holder of an Allowed Claim or interest but which does not indicate an acceptance or rejection of the Plan shall be deemed an acceptance of the Plan.

7.4    <u>Elimination of Vacant Classes.</u>  With the exception of Class 7, any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

7.5    <u>Presumed Acceptance by Non-Voting Classes.</u>  If a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

7.6    <u>Cram-down.</u>  With respect to any impaired Class of Claims or Equity Security Interests that fails to accept the Plan or is deemed to have rejected the Plan in accordance with sections 1126 and 1129(a) of the Bankruptcy Code, the Debtor requests that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE 8. <u>MEANS OF EFFECTUATING THE PLAN.</u>

8.1    <u>In General.</u>  The Plan is to be implemented in a manner consistent with section 1123 of the Bankruptcy Code. The Debtor is authorized to take any and all actions that may be necessary or appropriate to implement the terms of the Plan.

8.2    <u>Rental Income.</u>  The Debtor will fund its payment obligations under the Plan from income derived from the Debtor's post-confirmation business operations, including rental income from the Master Lease.

24

8.3     Plan Sponsor. On a monthly basis after the Effective Date, the Plan Sponsor shall advance to the Debtor such funds (the "**Sponsor Advances**") as may be necessary to make up any shortfall in the amounts necessary for the Debtor to timely make the payments required under the Plan. The Sponsor Advances shall accrue interest at the rate of 10% per annum from the date advanced until paid in full. Repayment of the Sponsor Advances shall be secured by a valid and perfected Lien and security interest (the "**Sponsor Lien**") in all Assets of the Debtor, subordinate to all Liens against the Debtor's Assets existing as of the Petition Date. Repayment of the Sponsor Advances shall be subordinate to the payment in full of: (i) all post-petition fees and expenses incurred by the Reorganized Debtor in the Claim administration process, (ii) all Allowed Administrative Expense Claims and Allowed Priority Claims, and (iii) all Allowed Class 1-7 Claims. Notwithstanding anything to the contrary in applicable non-bankruptcy law, all Liens and security interests granted to Plan Sponsor under this Plan or the Confirmation Order shall be deemed perfected and enforceable as of the Effective Date without the need for any filing or recordation of any document in any jurisdiction. The Confirmation Order shall constitute sufficient and conclusive evidence of such perfection. Notwithstanding the foregoing, upon the request of the Plan Sponsor, the Debtor shall execute and deliver such notes, financing statements, deeds of trust, security agreements, assignments and other documents as may be reasonable requested to evidence the subordinate Liens granted hereunder. The Plan Sponsor also may record a copy of the Confirmation Order in the Official Records of Davidson County, Tennessee.

8.4     Sale of The Shops at Plaza Mariachi. As permitted by sections 1123(a)(5), 1123(b), and 1141(c) of the Bankruptcy Code, the Debtor shall continue to market The Shops at Plaza Mariachi for sale as a means of generating proceeds to pay Allowed Secured Claims under the Plan. Any sale of The Shops at Plaza Mariachi that does not generate sufficient proceeds to pay all Allowed Secured Claims secured by Liens against such

property in full at closing, shall be subject to the prior written consent of the holders of any Allowed Secured Claims that will not be paid in full at the closing of the sale.

8.5     Other Sales or Refinance. To the extent necessary, the Debtor reserves the right to consider and pursue a refinance of the Debtors' Assets and/or a sale of substantially all Assets of the Debtor at any time to facilitate the payment in full of all Allowed Secured Claim by the 3rd anniversary of the Effective Date of the Plan.

8.6     Revesting of Assets in Reorganized Debtor. Except as otherwise expressly provided in this Plan, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all of the Debtor's assets and those of its Estate shall automatically be retained and revested in the Reorganized Debtor, free and clear of all Claims, liens, contractually-imposed restrictions, charges, encumbrances and interests of creditors and Equity Security Holders on the Effective Date, with all such Claims, liens, contractually-imposed restrictions, charges, encumbrances and interests being extinguished except as otherwise provided in this Plan. As of the Effective Date, the Reorganized Debtor may acquire and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges it incurs for professional fees, disbursements, expenses or related support services after the Effective Date without any application to the Bankruptcy Court.

8.7     Disbursing Agent. The Debtors shall serve as the Disbursing Agent and shall disburse all payments required under the Plan.

8.8     Corporate Action. Pursuant to section 1142 of the Bankruptcy Code and any applicable provisions of the business corporation law of any applicable state, the entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to consummate and implement the provisions of this Plan on and after the Effective Date, and all such actions

26

taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including without limitation: (a) the cancellation of all of the issued and outstanding Equity Security Interests in the Debtor; (b) the issuance of the new Equity Security Interests in the Debtor; (c) the election of directors, managers and officers in accordance with this Plan; (d) the adoption of the Reorganized Debtor's organizational documents, which shall supersede the prior certificates of incorporation, articles of organization, by-laws or other organizational documents, as appropriate, of the Reorganized Debtor; and (e) all actions as are necessary or appropriate to close or dismiss the Case. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the members, stockholders, directors or managers of the Debtor, the Reorganized Debtor or any of their affiliates. On the Effective Date, the manager of the Reorganized Debtor, and any successor manager, are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by this Plan in the name of and on behalf of the Debtor and/or the Reorganized Debtor, as applicable.

8.9 <u>Post-Effective Date Management of the Reorganized Debtor.</u> Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial manager of the Reorganized Debtor shall be the individual set forth on Schedule 8.5 to the Plan. The manager will serve from the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the articles of organization (or comparable constituent documents) of the Reorganized Debtor and state law. The manager will not receive any compensation for serving as manager.

8.10 <u>Prohibition on Issuance of Non-Voting Shares.</u> In accordance with 11 U.S.C. § 1123(a)(6), until the Debtors have made all payments required under the Plan, the Debtors are prohibited from issuing any nonvoting equity securities.

8.11    <u>Effectuating Documents; Further Transactions.</u>  The Reorganized Debtor or its designee shall be authorized to (a) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (b) certify or attest to any of the foregoing actions.

## ARTICLE 9.  <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES.</u>

9.1    The Plan contemplates and hereby provides for the rejection, pursuant to section 365 of the Bankruptcy Code, of any and all Executory Contracts and Unexpired Leases of the Debtor which are in force on the Effective Date, except (i) those Executory Contracts and Unexpired Leases which were specifically assumed pursuant to an order of the Bankruptcy Court, and (ii) those Executory Contracts and Unexpired Leases listed on Schedule 9.1 attached hereto, which Executory Contracts and Unexpired Leases shall be deemed assumed on the Effective Date.  Schedule 9.1 includes the cure amount, if any, applicable to each Executory Contract and Unexpired Lease.

9.2    The Confirmation Order (except as otherwise provided therein) shall constitute an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, effective as of the Effective Date, approving the assumptions and rejections hereunder.  Each contract and lease assumed pursuant to section 9.1 shall be assumed only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.  Assumption of a contract or lease pursuant to section 9.1 shall not constitute an admission by the Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or the Reorganized Debtor, as applicable, have any liability thereunder.  All Executory Contracts and Unexpired Leases that are assumed will be assumed under their present terms or upon such terms as are agreed to in writing between the Reorganized Debtor and the counterparty to such contract or lease.

28

9.3　　The Debtor will serve a copy of the Plan on all non-Debtor counterparties to each Executory Contract or Unexpired Lease prior to the Confirmation Hearing.  Each such counterparty shall have until the date that is five (5) Business Days prior to the Confirmation Hearing to file an objection to the assumption of its Executory Contract or Unexpired Lease (whether the objection relates to the cure amount or otherwise).  If any objections are filed and cannot be resolved by agreement, the Bankruptcy Court shall hold a hearing to determine the cure amount with respect to such Executory Contract or Unexpired Lease or to otherwise resolve the objection, which hearing may be the Confirmation Hearing.  Any party failing to object to the assumption of their Executory Contract or Unexpired Lease as set forth above shall be forever barred from asserting, collecting or seeking to collect any cure amount or from otherwise objecting to the assumption and assignment of such Executory Contract or Unexpired Lease. Notwithstanding the foregoing, or anything else in this Article 9, with respect to any Executory Contract or Unexpired Lease which is the subject of an objection, the Reorganized Debtor shall retain the right, until five (5) Business Days following any order resolving such objection having become a Final Order, to reject such Executory Contract or Unexpired Lease by amending Schedule 9.1.  Within ten (10) days of the later of the Effective Date or the date that an order of the Bankruptcy Court establishing the cure amount of such Executory Contract or Unexpired Lease becomes a Final Order, or as otherwise agreed with the counterparty to each Executory Contract or Unexpired Lease, the Reorganized Debtor shall pay the cure amounts to the non-Debtor parties to such Executory Contracts and Unexpired Leases being assumed and/or assigned.

9.4　　NOTWITHSTANDING ANY OTHER PROVISION IN THIS PLAN OR PRIOR NOTICE OF ANY KIND FROM THE CLERK OF THE BANKRUPTCY COURT, ANY AND ALL CREDITORS OR PERSONS WITH CLAIMS AGAINST THE DEBTOR'S ESTATE ARISING OUT OF OR IN CONNECTION WITH OR DUE TO THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE

29

PURSUANT TO THE PLAN SHALL HAVE THIRTY (30) DAYS FROM THE EFFECTIVE DATE WITHIN WHICH TO FILE A PROOF OF CLAIM IN THE TRUE AMOUNT OF SUCH CLAIMS. ANY CREDITOR THAT FAILS TO FILE ITS REJECTION PROOF OF CLAIM WITHIN THE THIRTY (30) DAY PERIOD, SHALL HAVE NO CLAIM AGAINST THE DEBTOR OR ITS ESTATE UNDER THE PLAN OR OTHERWISE ARISING OUT OF OR IN CONNECTION WITH OR DUE TO THE REJECTION OF THE APPLICABLE EXECUTORY CONTRACT OR UNEXPIRED LEASE, ALL SUCH CLAIMS WILL BE DEEMED WAIVED, DISMISSED, AND RELEASED, AND SHALL BE NULL AND VOID.

9.5 Any Claim that arises from the rejection of an Executory Contract or Unexpired Lease shall, to the extent such Claim becomes an Allowed Claim, be treated as a Class 6 General Unsecured Claim.

9.6 Any claim filed in accordance with the provisions of section 9.4 hereof shall be treated as a Disputed Claim until the period of time has elapsed within which the Reorganized Debtor may file an objection to such Claim.

**ARTICLE 10. RETENTION OF JURISDICTION.**

10.1 Notwithstanding the entry of the Confirmation Order or the occurrence of Effective Date, the Bankruptcy Court shall retain jurisdiction over this Case and any proceedings related thereto to the fullest extent permitted by the Bankruptcy Code or applicable law, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

10.2 In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under section 1142 of the Bankruptcy Code. If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this section, or if the Reorganized Debtor elect to bring an action or proceeding in any other forum, then

30

this section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority, or commission having competent jurisdiction over such matters.

10.3    Without limiting the foregoing, the Bankruptcy Court shall retain jurisdiction of the Case for the following matters:

10.3.1    To enable the  Reorganized Debtor to consummate any and all proceedings which may have been brought before or after the entry of the Confirmation Order, to challenge or object to the allowance of Claims and to recover any preferences, transfers, assets or damages to which the Reorganized Debtor may be entitled under the applicable provisions of the Code or other federal, state or local law;

10.3.2    To adjudicate all controversies concerning the classification or allowance of a Claim or Equity Security Interest;

10.3.3    To adjudicate all disputes regarding or relating in any way to Claims, Equity Security Interests, and the Plan;

10.3.4    To hear and determine all claims or motions arising from or seeking the assumption and/or assignment or rejection of any Executory Contracts or Unexpired Leases, and to consummate the rejection and termination thereof or with respect to any Executory Contracts or Unexpired Leases to which an application or motion for rejection or termination is filed before entry of the Confirmation Order;

10.3.5    To liquidate the amount of any Disputed, contingent or unliquidated Claims;

10.3.6    To adjudicate all claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof, including the adjudication of all claims asserted by Creditors and Holders of Equity Security Interests;

10.3.7    To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtor during the pendency

31

of the Case;

10.3.8 To adjudicate, determine and resolve any and all adversary proceedings, applications, motions, and contested or litigated matters, instituted before the closing of the Case;

10.3.9 To recover all Assets and properties of the Debtor, wherever located;

10.3.10 To adjudicate and determine any cause of action retained by the Debtor or otherwise provided for under the Plan or pursuant to the Confirmation Order;

10.3.11 To make orders as are necessary or appropriate to carry out the provisions of the Plan, or in aid of confirmation and consummation of the Plan;

10.3.12 To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects hereof;

10.3.13 To hear and determine all matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

10.3.14 To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Bankruptcy Court before or after the Confirmation Date;

10.3.15 To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of the Bankruptcy Court in the Case entered on or before the Effective Date; and

10.3.16 To enter an Order closing the Case.

## ARTICLE 11. PROCEDURES FOR RESOLVING DISPUTED CLAIMS.

11.1     Objections to Claims.  Any objections to Claims shall be served and filed on or before the later of: (i) sixty (60) days after the Effective Date; (ii) thirty (30) days after a request for payment or proof of Claim is timely filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Creditor if service is effected in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on the Creditor's behalf in the Case; or (c) by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified in the proof of Claim or any attachment thereto.

11.2     Disputed Claims Reserves.  From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by a Final Order of the Bankruptcy Court, the Reorganized Debtor shall, consistent with and subject to section 1123(a)(4) of the Bankruptcy Code, reserve an aggregate amount equal to the Pro Rata share of each distribution that would have been made to a holder of a Disputed Claim and allocate such amount to the applicable Disputed Claim reserve as if such Disputed Claim were an Allowed Claim against the Debtor in an amount equal to the least of (i) the filed amount of such Disputed Claim, (ii) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtor.

11.3     Payments and Distributions with Respect to Disputed Claims.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim

unless and until the amount of such Disputed Claim which constitutes an Allowed Claim is determined, and the balance (if any) becomes a Disallowed Claim.

11.4    Distributions after Allowance.  After such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan in accordance with the provisions hereof.  Distributions in respect of Disputed Claims that become Allowed Claims shall be made within fifteen (15) days after such Disputed Claims become Allowed Claims by Final Order of the Bankruptcy Court or as soon thereafter as practicable.

**ARTICLE 12.  PROVISIONS CONCERNING DISTRIBUTIONS.**

12.1    Time of Distributions under the Plan.  Payments and distributions to be made on or after the Effective Date pursuant to the Plan shall be made on such date, or as soon as practicable thereafter, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court, or as may be agreed to by the Reorganized Debtor and the holder of the Allowed Claim.

12.2    Payment Dates.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, or as soon as practicable thereafter, or as may be agreed to by the Reorganized Debtor and the holder of the Allowed Claim.

12.3    Manner of Payments under the Plan.  Cash payments made pursuant to the Plan shall be made in the currency of the United States, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Distributions to all holders of Allowed Claims shall be made (a) at the addresses set forth in the proof of claim filed by such holders (or at last known addresses of such holders if no proofs of claims were filed or the Debtor were notified of a change of address); or (b) at the addresses set forth in any written notices of address change delivered to the Reorganized Debtor or the Bankruptcy Court; or (c) at

34

the addresses reflected in the Debtor's schedules if no claim shall have been filed and no written notice of an address change has been received by the Reorganized Debtor. No payments shall be made to a holder of a Disputed Claim unless and until such Claim becomes an Allowed Claim by a Final Order.

12.4 <u>Fractional Cents</u>. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

12.5 <u>Non-Negotiated Checks</u>. If a Holder of an Allowed Claim, or any other claim or interest fails to negotiate a check issued to such holder under the Plan within sixty (60) days of the date such check was issued by the Reorganized Debtor, then the amount of Cash or other property attributable to such check shall be deemed to be "Unclaimed Distributions," and the payee of such check shall be deemed to have no further Claim or future Claim against the Reorganized Debtor.

12.6 <u>Unclaimed Distributions</u>. In the event any payment to a holder of a Claim under the Plan remains unclaimed for a period of sixty (60) days after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder. Unclaimed Distributions shall be returned to the Reorganized Debtor.

12.7 <u>Disputed Payments or Distributions</u>. In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Reorganized Debtor may, in lieu of making such payment or distribution to such Entity, make it instead into an escrow account or to a disbursing agent, for payment or distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves, and the payment or distribution shall be deemed to have been made to and received by the

35

Entity determined to be entitled to such payment or distribution as of the date that the Reorganized Debtor delivers such payment or distribution to a disbursing agent or escrow account.

## ARTICLE 13. EFFECT OF CONFIRMATION OF PLAN.

13.1    Binding Effect.    On and after the Confirmation Date, the provisions of the Plan shall bind the Debtor and any holder of a Claim against, or Equity Security Interest in, the Debtor and its successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has voted on or accepted the Plan.

13.2    Discharge.    Upon the Effective Date and in consideration of the Distributions to be made under this Plan, except as otherwise provided in this Plan or in the Confirmation Order, each holder (as well as any trustee or agent on behalf of such holder) of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in this Plan, upon the Effective Date, all such holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor or Reorganized Debtor.

13.3    Post-Confirmation Quarterly Fees.    Quarterly fees pursuant to 28 U.S.C. section 1930(a)(6) continue to be payable to the Office of the United States Trustee by the Reorganized Debtor until such time as the Case is converted, dismissed, or closed pursuant to a final decree.

13.4    Retention of Claims and Causes of Action.  Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically

36

released or assigned in connection with this Plan or in any settlement agreement approved during the Case: (i) any and all Claims accruing to the Debtor or its Estates shall remain assets of and vest in the Reorganized Debtor whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Claims have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) neither the Reorganized Debtor nor the Estate waives, releases, relinquishes, forfeits, or abandons (nor shall they be estopped or otherwise precluded or impaired from asserting) any Claims or defenses that constitute property of the Debtor or the Estates: (a) whether or not such Claims or defenses have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Claims are currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such Claims filed a proof of claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Claim or cause of action, in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Reorganized Debtor's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Claim that the Debtor or its Estate have or may have as of the Effective Date.

Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released or assigned in connection with this Plan or in any settlement agreement approved during the Case, the Reorganized Debtor expressly reserves all Claims and defenses for later adjudication by the Reorganized Debtor and therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel,

37

issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Claims and defenses upon or after the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, and/or the Confirmation Order. In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt Claims that are alleged in any lawsuits in which the Debtor is a defendant or an interested party, against any Person or Governmental Entity, including the plaintiffs or co-defendants in such lawsuits. Any Person or Governmental Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase, sale of goods or otherwise), or who has received services from the Debtor, or who has received money or property from the Debtor, or who has transacted business with the Debtor, or who has leased equipment or property from or to the Debtor should assume that such obligation, receipt, transfer or transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may be the subject of an action after the Effective Date, whether or not: (a) such Person or Governmental Unit has Filed a proof of Claim against the Debtor in the Case; (b) such Person's or Governmental Unit's proof of Claim has been objected to by the Debtor; (c) such Person's or Governmental Unit's Claim was included in the Debtor's Schedules; or (d) such Person's or Governmental Unit's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as contingent, unliquidated or disputed.

13.5    NO WAIVER OF CLAIMS.    NEITHER THE FAILURE TO LIST A CLAIM IN THE SCHEDULES FILED BY THE DEBTOR, THE FAILURE OF THE DEBTOR OR ANY OTHER PERSON TO OBJECT TO ANY CLAIM FOR PURPOSES OF VOTING, THE FAILURE OF THE DEBTOR OR ANY OTHER PERSON TO OBJECT TO A CLAIM OR ADMINISTRATIVE EXPENSE BEFORE CONFIRMATION OR THE EFFECTIVE DATE, THE FAILURE OF ANY PERSON TO ASSERT A CLAIM OR CAUSE OF ACTION BEFORE CONFIRMATION OR THE EFFECTIVE DATE, THE ABSENCE OF A PROOF OF CLAIM HAVING BEEN FILED

38

WITH RESPECT TO A CLAIM, NOR ANY ACTION OR INACTION OF THE DEBTOR OR ANY OTHER PERSON WITH RESPECT TO A CLAIM, OR ADMINISTRATIVE EXPENSE, OTHER THAN A LEGALLY EFFECTIVE EXPRESS WAIVER OR RELEASE SHALL BE DEEMED A WAIVER OR RELEASE OF THE RIGHT OF THE REORGANIZED DEBTOR, BEFORE OR AFTER SOLICITATION OF VOTES ON THE PLAN OR BEFORE OR AFTER CONFIRMATION OR THE EFFECTIVE DATE TO (A) OBJECT TO OR EXAMINE SUCH CLAIM OR ADMINISTRATIVE EXPENSE, IN WHOLE OR IN PART OR (B) RETAIN AND EITHER ASSIGN OR EXCLUSIVELY ASSERT, PURSUE, PROSECUTE, UTILIZE, OTHERWISE ACT OR OTHERWISE ENFORCE ANY CLAIM OR CAUSE OF ACTION AGAINST THE HOLDER OF ANY SUCH CLAIM.

## ARTICLE 14. THIRD-PARTY INJUNCTION.

14.1 <u>Injunction Against Actions by Secured Creditors Against PM Realty.</u> Except as otherwise expressly provided in the Plan or the Confirmation Order, upon the Effective Date and continuing during the term of this Plan and for so long as the Debtor and PM Realty continue to perform their obligations under the Plan:

14.1.1 All Secured Creditors holding claims guaranteed by PM Realty shall be permanently enjoined from commencing or continuing any action or proceeding against PM Realty or its assets based upon or arising from such guaranty, whether in law or equity, including actions to collect, enforce, or obtain recovery on account of such claims; and

14.1.2 All Secured Creditors shall be further enjoined from interfering with PM Realty's business operations, property, contractual rights, or assets in any manner inconsistent with PM Realty's obligations and rights under this Plan.

14.2 <u>Termination of Injunction.</u> This injunction shall terminate automatically and without further order of the Court upon:

14.2.1 PM Realty's material breach of its obligations under the Plan following notice and an opportunity to cure as set forth in the Plan; or

14.2.2 the completion of all payments required under the Plan to the affected Secured Creditors.

## ARTICLE 15. GENERAL PROVISIONS.

15.1    <u>Notices under the Plan.</u>  Notices, requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and:

<u>If sent to the Debtor, addressed to:</u>

Plaza Mariachi, LLC
Attn.: Legal Department
3955 Nolensville Pike
Nashville, TN 37211

<u>With Copies to:</u>

Todd A. Burgess
The Burgess Law Group
3131 E. Camelback Road, Suite 224
Phoenix, AZ 85016
Tel. 602-806-2100
Email: todd@theburgesslawgroup.com

Sean C. Wlodarczyk
EVANS, JONES & REYNOLDS, PC
401 Commerce Street, Suite 710
Nashville, TN 37219
Email: Swlodarczyk@ejrlaw.com

15.2    <u>Withholding Taxes/Setoffs.</u>  The Reorganized Debtor shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to Allowed Claims for wages of any kind.  The Reorganized Debtor may, but shall not be required to,

40

set off or recoup against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim the Debtor may have against such holder.

15.3    Headings.  The headings used in this Plan are inserted for convenience only and neither shall constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

15.4    Severability.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, but not otherwise, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.5    Certain Terminations.  On the Effective Date, all instruments evidencing indebtedness of the Debtor discharged by the Plan shall be deemed canceled, except to the extent that this Plan provides for the retention of Liens.

15.6    Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Tennessee without regard to its conflicts of law principles.

41

15.7     Contingent or Unliquidated Claims.    The Bankruptcy Court shall fix, liquidate or estimate the amount of any disputed, contingent or unliquidated Claim pursuant to section 502 of the Bankruptcy Code.  The amount so fixed shall be deemed the Allowed amount of such disputed, contingent or unliquidated Claim for purposes of this Plan.  In lieu thereof, the Bankruptcy Court may determine the amount to be reserved for such contingent or unliquidated Claim, which amount shall be the maximum amount, which the holder of such contingent or unliquidated Claim shall be entitled to receive under this Plan if such disputed, contingent or unliquidated Claim is Allowed in whole or in part.

15.8     Revocation of Plan. The Debtor reserves and shall have the right to revoke and withdraw this Plan at any time before Confirmation.

15.9     Modification of Plan.  The Debtor reserves and shall have the right to propose alterations, amendments, or modifications of or to the Plan in writing at any time prior to the Confirmation Date, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Debtor may alter, amend, or modify the Plan at any time after the Confirmation Date and before substantial consummation in accordance with section 1127 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, to the extent, and subject to the conditions, set forth in Bankruptcy Rule 3019.  Without limiting the foregoing, after Confirmation, the Debtor may, upon Order from the Bankruptcy Court, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose of this Plan.

15.10     Reservation of Rights.    Nothing contained herein shall prohibit the Debtor from prosecuting or defending any of their rights as may exist on their own behalf before the Effective Date.  If the Debtor withdraws or revokes the Plan prior to the Confirmation Date, or if Confirmation of the Plan does not otherwise occur, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a

42

waiver or release of any Claims by or against the Debtor, their Estates, or any other Person, or to prejudice in any manner, the rights and remedies of the creditors, the Debtor, their Estates, or any other Person in any further proceedings involving the Debtor or their Estates or any other Person. The filing of the Plan and or any modifications hereto, and the Plan itself shall not constitute a waiver by the Debtor of any rights, remedies, objections, or causes of action they may have or may wish to raise with respect to any matter whatsoever, including, without limitation, any other plan or plans filed or to be filed in the Case, all of which rights and objections are hereby reserved.

15.11 <u>Exemption from Certain Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer hereunder will not be subject to any stamp, tax, or similar tax.

15.12 <u>PLAN INJUNCTION</u>. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AND EXCEPT FOR ANY ACTIONS TIMELY FILED PURSUANT TO SECTION 523 OF THE BANKRUPTCY CODE OR ANY CLAIMS DECLARED BY THE BANKRUPTCY COURT TO BE NON-DISCHARGEABLE PURSUANT TO SECTION 523 OF THE BANKRUPTCY CODE, AS OF THE CONFIRMATION DATE, BUT SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST THE DEBTOR OR ITS ESTATE, OR EQUITY SECURITY INTERESTS IN THE DEBTOR, ARE, WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY SECURITY INTERESTS, PERMANENTLY ENJOINED FROM AND AFTER THE CONFIRMATION DATE FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) WITH RESPECT TO ANY SUCH CLAIM

43

AGAINST OR AFFECTING THE DEBTOR, ITS ESTATE OR ANY OF ITS PROPERTY, OR ANY DIRECT OR INDIRECT POST-EFFECTIVE DATE TRANSFEREE OF ANY PROPERTY OF, OR POST-EFFECTIVE DATE DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS, SOLELY IN THEIR CAPACITY AS SUCH TRANSFEREES OR SUCCESSORS IN INTEREST, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR, SOLELY IN SUCH CAPACITY; (II) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, WITH RESPECT TO ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR, ITS ESTATE OR ANY OF ITS PROPERTY, OR ANY DIRECT OR INDIRECT POST-EFFECTIVE DATE TRANSFEREE OF ANY PROPERTY OF, OR POST-EFFECTIVE DATE DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS, SOLELY IN THEIR CAPACITY AS SUCH TRANSFEREES OR SUCCESSORS IN INTEREST, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR, SOLELY IN SUCH CAPACITY; (III) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, ITS ESTATE OR ANY OF ITS PROPERTY, OR ANY DIRECT OR INDIRECT POST-EFFECTIVE DATE TRANSFEREE OF ANY PROPERTY OF, OR POST-EFFECTIVE DATE DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS, SOLELY IN THEIR CAPACITY AS SUCH TRANSFEREES OR SUCCESSORS IN INTEREST, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR, SOLELY IN SUCH CAPACITY; (IV) ASSERTING INITIALLY AFTER THE EFFECTIVE DATE ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE

TO THE DEBTOR, ITS ESTATE OR ANY OF ITS PROPERTY, OR ANY DIRECT OR
INDIRECT POST-EFFECTIVE DATE TRANSFEREE OF ANY PROPERTY OF, OR
POST-EFFECTIVE DATE DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO,
ANY OF THE FOREGOING PERSONS, SOLELY IN THEIR CAPACITY AS SUCH
TRANSFEREES OR SUCCESSORS IN INTEREST, OR ANY PROPERTY OF ANY
SUCH TRANSFEREE OR SUCCESSOR, SOLELY IN SUCH CAPACITY; AND (V)
ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER,
THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE
PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW. BY
ACCEPTING A DISTRIBUTION PURSUANT TO THE PLAN, EACH HOLDER OF
AN ALLOWED CLAIM RECEIVING DISTRIBUTIONS PURSUANT TO THE PLAN
WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THE
INJUNCTIONS SET FORTH IN THIS SECTION, AND, EXCEPT AS SET FORTH IN
THIS SECTION, WAIVES ANY AND ALL CLAIMS, CAUSES OF ACTION,
REMEDIES AND OBJECTIONS OF EVERY KIND AGAINST THE DEBTOR.

15.13  <u>Term of Injunctions or Stays</u>.  Unless otherwise provided, all injunctions or
stays arising before the Confirmation Date in accordance with sections 105 or 362 of the
Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and
effect until the Effective Date, or such later date as provided under applicable law.  For the
avoidance of doubt, this section 14.13 does not apply to the permanent injunction set forth
in section 14.12 of the Plan.

15.14  <u>INJUNCTION AGAINST INTERFERENCE WITH PLAN</u>.  UPON THE
ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND
EQUITY SECURITY INTERESTS AND OTHER PARTIES IN INTEREST, ALONG
WITH ITS PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS,
DIRECTORS, OR PRINCIPALS, SHALL BE ENJOINED FROM TAKING ANY

ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN.

15.15 <u>EXCULPATION</u>. PURSUANT TO 11 U.S.C. §1107, THE DEBTOR'S FIDUCIARIES ARE PROVIDED STATUTORY QUALIFIED IMMUNITY FOR THOSE INSTANCES IN WHICH THEY STEP INTO THE SHOES OF A CHAPTER 11 TRUSTEE DURING THE ADMINISTRATION OF THIS CASE. THIS SAME QUALIFIED IMMUNITY IS THEREBY IMPUTED TO THE DEBTOR'S BANKRUPTCY PROFESSIONALS AUTHORIZED BY THE BANKRUPTCY COURT TO PROVIDE SERVICES ON BEHALF OF THIS BANKRUPTCY ESTATE. THIS QUALIFIED IMMUNITY IS LIMITED IN NATURE. IT ONLY PERTAINS TO ACTIONS TAKEN BY THE DEBTOR'S FIDUCIARIES AND AUTHORIZED PROFESSIONALS FROM THE PETITION DATE THROUGH THE CONFIRMATION DATE UPON WHICH DATE A CHAPTER 11 TRUSTEE'S DUTIES AND RESPONSIBILITIES TO THE BANKRUPTCY ESTATE ARE TERMINATED BY STATUTE. THE QUALIFIED IMMUNITY IS ONLY APPLICABLE TO THOSE ACTIONS TAKEN BY THE DEBTOR'S FIDUCIARIES AND ITS AUTHORIZED BANKRUPTCY PROFESSIONALS FOR ACTIONS THAT ARE NECESSARY TO THE ADMINISTRATION OF THE BANKRUPTCY CASE BUT DOES NOT APPLY TO CONDUCT INVOLVING GROSS NEGLIGENCE; WILLFUL, WANTON OR INTENTIONAL MISCONDUCT; OR BREACHES OF FIDUCIARY DUTIES. QUALIFIED IMMUNITY SHALL NOT EXTEND TO ORDINARY BUSINESS TRANSACTIONS OF THE DEBTOR. THIS QUALIFIED IMMUNITY IS EQUAL TO THE SAME PROTECTION AFFORDED A BANKRUPTCY TRUSTEE AND SUCH TRUSTEE'S PROFESSIONALS. FINALLY IN RECOGNITION OF THE APPLICABILITY OF THE BARTON DOCTRINE, ANY PARTY SEEKING TO BRING AN ACTION AGAINST A FIDUCIARY OF THE DEBTOR, OR ITS AUTHORIZED PROFESSIONALS, FOR ACTIONS ARISING FROM OR RELATED TO THIS

46

BANKRUPTCY PROCEEDING, MUST SEEK PERMISSION OF THE BANKRUPTCY COURT BEFORE COMMENCING A LAWSUIT.

15.16 <u>Successors and Assigns</u>.  The rights and obligations of any entity named or referred to in the Plan shall be binding upon and shall insure to the benefit of, the predecessors, successors, assigns and agents of such Entity.

**ARTICLE 16.  CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN.**

16.1 <u>Conditions to the Effective Date.</u>  The following shall be conditions to the occurrence of the Effective Date unless such conditions shall have been duly waived as provided below:

16.1.1 The Confirmation Order in form and substance acceptable to the Debtor shall have become a Final Order, except that the Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order.

16.2 <u>Remedies for Default.</u>  If the Debtors fail to timely make any payment required under the Plan, and such default remains uncured for sixty (60) days, any creditor or party-in-interest adversely affected by such default may file a motion under Bankruptcy Code § 1112(b) with the Bankruptcy Court seeking the conversion of the Debtors' cases to Chapter 7.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed to creditors pursuant to the Plan, including specifically all causes of action or claims for preference, recovery of transferred assets, or damages, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Court during this case.

Respectfully submitted this 28th day of July, 2025 by:

Plaza Mariachi, LLC, Debtor-in-Possession

47

By: */s/Mahan Mark Janbakhsh (with permission)*
Name:  Mahan Mark Janbakhsh
Its:  Member and Manager

Filed by:

THE BURGESS LAW GROUP

By: ___*/s/Todd A. Burgess*_____
    Todd A. Burgess (AZ SBN 019013)
    (Admitted *pro hace vice*)
    Janel M. Glynn (AZ SBN 025497)
    (Admitted *pro hace vice*)
    3131 E. Camelback Road, Suite 224
    Phoenix, AZ 85016
    Tel. 602-806-2100
    Email: todd@theburgesslawgroup.com
    Email: janel@theburgesslawgroup.com
    *Bankruptcy Counsel for the Debtor*

    Sean C. Wlodarczyk (TN SBN 30410)
    EVANS, JONES & REYNOLDS, PC
    401 Commerce Street, Suite 710
    Nashville, TN 37219
    P: (615) 259-4685
    F: (615) 256-4448
    Email: Swlodarczyk@ejrlaw.com
    *Local Counsel for Debtor*

48

Case 3:24-bk-02441   Doc 136-1   Filed 07/28/25   Entered 07/28/25 19:04:20   Desc
Exhibit A (Plan  of Reorganization)    Page 49 of 51

## Schedule 8.5
## Post-Petition Management

Initial Manager, Mahan Mark Janbakhsh

Schedule 9.1
Executory Contracts and Leases to be Assumed

Master Lease Agreement, dated January 27, 2016 between Plaza Mariachi, LLC, as lessor, and PM Realty Nashville, LLC, as lessee. The Debtor reserves all rights and remedies with respect to, and does not waive, any existing defaults by lessee under the Master Lease Agreement.