# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Plaza Mariachi, LLC, | Case No. 3:24-bk-02441 |
| Debtors. | Hon. Judge Charles M. Walker |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF FIRST FINANCIAL BANK TO DEBTOR'S MOTION TO APPROVE: (I) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; (II) APPROVAL OF PAYMENT OF COMMISSION TO REAL ESTATE BROKER; AND (III) RELATED RELIEF**

NOW COMES Creditor and party-in-interest, First Financial Bank ("FFB"), by undersigned counsel, and hereby objects (the "Objection") to the *Motion to Approve: (I) Sale of Real Property Free and Clear of Liens, Claims and Interests; (II) Approval of Payment of Commission to Real Estate Broker; and (III) Related Relief* [Dkt. No. 158] (the "Sale Motion")[1] submitted by Plaza Mariachi, LLC ("Plaza Mariachi" or the "Debtor"). In support of the Objection, FFB states as follows:

**Preliminary Statement**

1. By the Sale Motion, the Debtor seeks approval of its proposed sale of the Property to the Buyer (the "Sale"), free and clear of FFB's first and senior liens, and proposes specific Closing Payments to certain of its secured creditors, including FFB. Importantly, FFB does not hereby object to consummation of the Sale. Indeed, FFB has advocated for the Property's sale since the inception of this case. FFB does, however, object to the Debtor's proposed Closing

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

Payments, the approval of such Closing Payments at this time, and issuance of those payments at the Sale's closing as proposed by the Debtor. The Closing Payments, as proposed, improperly seek to pay junior creditors in full, while discounting FFB's senior indebtedness without FFB's consent. FFB further objects to the Debtor's attempt to contest and determine the amount of FFB's Claim and extent of its related lien through the Sale Motion, rather than through a separate motion or adversary proceeding.

## Jurisdiction

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408, 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The Debtor remains in possession of its property and in control of its affairs pursuant to 11 U.S.C. §§ 1107 and 1108.

4. To date, no Trustee, examiner, or committee of unsecured creditors has been appointed.

## Background

**A. Plaza Mariachi and The Shops at Plaza Mariachi**

5. The Debtor is a single-asset real estate entity that owns the Property.

6. The Property was purchased by the Debtor in 2015. In connection with that purchase, the Debtor and Heritage Bank USA, Inc., predecessor-in-interest to FFB entered into two loan transactions with the Debtor: Loan No. 1295 and Loan No. 1400 (together, the "Loans"). The various loan documents evidencing the Loans and the transaction contemplated thereby are

identified and attached as Exhibits A-I to FFB's proof of claim timely filed on November 25, 2024 (Claim # 8) (the "Claim").

7. As of the Petition Date, the Debtor's total obligations to FFB with respect to the Loans totaled Eight Million Two Hundred and Three Thousand Six Hundred Thirty-Nine and 37/100 Dollars ($8,203,639.37) (the "Prepetition Indebtedness"), calculated as follows:

**Loan No. 1295**

| | | |
|---|---|---|
| i. Principal | $ | 7,024,339.04 |
| ii. Interest through 07/01/24 | $ | 200,938.80 |
| iii. Fees and costs through 07/01/24 | $ | 52,435.70 |
| **TOTAL:** | **$** | **7,277,713.54** |

**Loan No. 1400**

| | | |
|---|---|---|
| i. Principal | $ | 907,446.75 |
| ii. Interest through 07/01/24 | $ | 15,729.08 |
| iii. Fees and costs through 07/01/24 | $ | 2,750.00 |
| **TOTAL:** | **$** | **925,925.83** |

*See* Claim. The Prepetition Indebtedness does not include any interest, late charges, costs and fees, including, without limitation, attorneys' fees and expenses that have accrued, and continue to accrue, since the Petition Date.

8. The Prepetition Indebtedness is secured by a first position Deed of Trust dated September 29, 2015, and recorded on October 2, 2015, at the Davidson County, Tennessee Register of Deeds as document 20151002-0100643, which was amended from time to time, most recently on January 15, 2016, and recorded on January 28, 2016, at the Davidson County, Tennessee Register of Deeds as document 20160128-0008248, regarding the Plaza Mariachi Property; and an Assignment of Rents dated September 29, 2015, and recorded October 2, 2015,

at the Davidson County, Tennessee Register of Deeds as document 20151002-0100644, which was amended from time to time, most recently on January 15, 2016, and recorded on January 28, 2016, at the Davidson County, Tennessee Register of Deeds as document 20160128-0008249, regarding the Plaza Mariachi Property.

9. The loans evidenced by Note 1400 and by Note 1295 had original maturity dates of September 29, 2022, and January 28, 2023, respectively.

10. However, as of March 14, 2020, the Debtor and the Guarantors were in default under the Loan Documents and acknowledged the existence of the defaults and their inability to pay the indebtedness owed at the time of the defaults in full.

11. After extending the maturity dates on the Loans eight times, subject to the terms of various forbearance agreements entered into between March 2020 and January 2024, FFB agreed to no further extensions beyond April 5, 2024, and initiated foreclosure proceedings against Plaza Mariachi.

**B. The Bankruptcy Case and Sale Motion**

12. The Debtor filed a Chapter 11 Voluntary Petition for Bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee on July 1, 2024 (the "Petition Date").

13. On November 25, 2024, FFB filed its Claim in the total amount of $8,203,639.37. FFB's Claim is fully secured.

14. On November 5, 2024, the Debtor filed the Sale Motion which included as Exhibit "A" thereto a proposed form of order granting the Sale Motion (the "Proposed Sale Order').

**Limited Objection and Reservation of Rights**

**I.  FFB Has No Objection to Sale of the Property To Buyer for the Proposed Sale Price.**

15. The purpose of this Objection is not to prevent a timely completion of the proposed Sale. FFB agrees that the Sale should be approved, and that the Property may be sold free and clear of liens and interests pursuant to section 363(f), with such liens to attach to the proceeds of the Sale.[2]

16. However, FFB objects to the proposed Closing Payments and asserts that such Closing Payments should not be funded at closing of the Sale. Rather, other than the amount necessary to pay actual closing costs, the proceeds of the Sale should be held in a separate account pending resolution of any dispute over the amount, nature, extent, validity, and/or priority of the liens attaching to such proceeds, and entry of an order of this Court directing distribution of the proceeds in accordance with the same.

**II.  The Sale Motion Has Not Objected to FFB's Claim, Nor Has it Sought Adjudication of the Same.**

17. Bankruptcy Rule 3012 states that, after notice and a hearing, the Court may determine the <u>amount</u> of a secured claim under section 506(a) of the Bankruptcy Code. Such a request may be made by motion, or in an objection to a claim. *See* Bankr. R. 3012(a), (b)(1); 11 U.S.C. § 506(a) (governing the determination of secured status). Rule 3012 does not allow a motion or objection to claim to determine the validity, priority, or extent (other than amount) of a lien in property.[3] *See* Bankr. R. 3012(a) ("the court may <u>determine the amount of a secured claim</u>

---

[2]  FFB believes that, absent its consent under section 363(f)(2), the Debtor could not sell the Property free and clear of FFB's liens, including pursuant to section 363(f)(3) or 363(f)(5).

[3]  As discussed below, a determination of the validity, priority, or extent of a lien in property must be litigated in an adversary proceeding.

under §506(a)"); Bankr. R. 3012(b)(1) ("a request to determine the amount of a secured claim may be made by motion, in an objection to a claim …") (emphasis added).

18. The Sale Motion seeks authority to issue the Closing Payments at closing of the Sale. However, the Sale Motion contains no request that the amount of FFB's secured claim be determined by this Court at this time pursuant to section 506(a) and Bankruptcy Rule 3012, and does not appear to object to FFB's Claim.[4] Nevertheless, the proposed Closing Payments in the Sale Motion appear to suggest that FFB should be paid less than the full amount of its Claim at closing, while proposing to pay junior lienholders, including Capital One[5] and certain mechanics and judgment lienholders,[6] in full from the Sale proceeds.

19. Thus, the Debtor has made no request that the amount of FFB's Claim, or the amounts of other claims secured by the Property, be determined by this Court at this time. Even if the Debtor had done so, such adjudication would be premature and procedurally improper.

20. Moreover, the Debtor has requested that the liens on the Property attach to the Sale proceeds to the same extent, validity, and priority as such liens, encumbered the Property. Therefore, it is unnecessary to make any determination of the amount or priority of any such liens prior to closing the anticipated Sale transaction.

---

[4] Paragraphs 5 and 7 (found on pages 10 and 11) of the Sale Motion point out that the initial contract rates of interest under FFB's loan documents are less than the interest rates applicable as of the Petition Date. This is true, and entirely irrelevant. Prior to and at the time of the Debtor's bankruptcy filing, the Debtor was in default under the loan documents, which provide for default interest rates of 10.25% (Loan 1295) and 9.75% (Loan 1400). Moreover, the forbearance agreements executed by the parties provided for an applicable interest rate of 12.00% for each of the loans, which interest rate continued to be effective as of the Petition Date.

[5] The Sale Motion proposes as part of the Closing Payments to pay Capital One $4,894,786.75, which is apparently the full amount due under the Settlement Agreement. *See* Sale Motion, p.10, ¶ 6.

[6] FFB asserts that under applicable Tennessee state law, the mechanics liens and judgment liens attached to the Property are junior to its lien.

21. For these reasons, the Court should not permit issuance of the Closing Payments, other than an amount necessary to cover actual closing costs, at closing of the Sale.

**III. The Sale Motion is Not the Appropriate Vehicle to Contest or Adjudicate the Nature, Extent, or Validity of Liens on the Property.**

22. To the extent the Debtor is seeking by its Sale Motion a determination of the nature, validity, or extent of FFB's lien on the Property, or those of any junior lienholders, such a request is properly the subject of a separate adversary proceeding, not the Sale Motion.

23. Bankruptcy Rule 7001 provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property—except a proceeding under Rule 3012 or Rule 4003(d)" [7] is an adversary proceeding.

24. As discussed above, Bankruptcy Rule 3012 only anticipates that the determination of the <u>amount</u> of a secured claim by motion or objection, but does not contemplate any determination of its validity or priority with respect to other lienholders. *See* Bankr. R. 3012.

25. Thus, to the extent the Debtor seeks a determination of the extent, validity, or priority of liens encumbering the Property, such determination is properly the subject of an adversary proceeding and should not be determined at this time.

26. Again, however, this need not prevent approval or completion of the proposed Sale transaction, as the proceeds from the Sale may be segregated and held pending resolution and determination of the liens attaching to the same.

27. Regardless of the procedural mechanism used to address any objection or disagreement with respect to FFB's lien and Claim, the Due Process Clause of the United States

---

[7] Inapplicable here, Rule 4003(d) addresses a proceeding under section 522(f) of the Bankruptcy Code to avoid a lien or other transfer of exempt property.

Constitution applies to proceedings under the Bankruptcy Code. *See, e.g.*, *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985) (applying due process requirements in a bankruptcy context). "The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Turney v. Federal Deposit Ins. Corp.*, 18 F.3d 865, 868 (10th Cir. 1994).

28. Any attempt to assert that FFB should be paid less than its full Claim from the proceeds of the Sale or should be paid after any other lienholder should be subject to adequate time to review and analyze any argument to that effect, together with the opportunity for supplemental briefing and potential discovery, before a hearing on such issues is scheduled. However, again, this should not prevent completion of the Sale transaction, with the proceeds of such transaction to remain subject to further litigation, with all parties' rights reserved with respect to the same.

### IV. Any Objection by a Junior Lienholder to the Sale May be Overruled Pursuant to 363(f)(5).

29. If any junior lienholder objects to the Sale Motion, this Court may nevertheless approve the Sale free and clear of such junior liens pursuant to section 363(f).

30. Section 363(f) provides that a debtor may sell property free and clear of interests in that property only if at least one of five specified requirements is satisfied. 11 U.S.C. § 363(f).

31. The Sale Motion argues that the Sale may be approved under section 363 of the Bankruptcy Code, and that the Property may be transferred to the Buyer free and clear of liens and interests under section 363(f)(3), or alternatively under section 363(f)(2)[8] for those lienholders who do not object.[9]

---

[8] The Sale Motion does not substantively address sections 363(f)(1), (4), or (5).
[9] FFB questions whether lack of objection to the Sale Motion may be considered adequate consent for purposes

32. In addition to those sections addressed by the Debtor in the Sale Motion, with respect to junior lienholders such as Capital One or mechanics lienholders, the Property may also be transferred to Buyer free and clear of liens under section 363(f)(5).

33. Section 363(f)(5) of the Bankruptcy Code provides that a debtor may sell property of the estate free and clear of a secured creditors liens if "such [secured creditor] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such judgment." 11 U.S.C. § 363(f)(5).

34. It is settled law that the phrase "could be compelled" in section 363(f)(5) contemplates a "hypothetical proceeding" in which a secured creditor could be compelled to accept a monetary satisfaction of its interest, but does not require the sale proceeding itself to provide for actual satisfaction of the interests in question out of the proceeds. *See In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829 (N.D. Ill. 1993) ("Section 363(f)(5) would repeat Section 363(f)(3) if it were interpreted merely to require a specific amount of money that the trustee could pay in order to sell the property free and clear of a lien."); *In re Healthco Int'l., Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (holding section 363(f)(5) "requires only that the interest in question be subject to final satisfaction on a hypothetical basis, not that there be an actual payment in satisfaction of the interest from the proceeds of the sale ..."); *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002) (holding phrase "could be compelled" only requires showing that mechanism exists whereby lien or interest could be extinguished; it does not require actual payment to creditor).

---

of section 363(f)(2).

35. Additionally, the majority view holds that the term "money satisfaction" means that a debtor may sell property free and clear of liens where a legal or equitable proceeding exists that will force the lienholder to accept less than full money satisfaction of their interest. See *In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 462 (E.D. Mich. 1995) (highlighting interpretation of majority).

36. Clearly, a foreclosure sale, UCC sale, or other nonbankruptcy remedy constitutes a "legal or equitable proceeding" within the meaning of section 363(f)(5). *See In re Gulf States Steel*, 285 B.R. at 502, 508, 518 (referring to section 363(f)(5) sale providing adequate protection and substantive and procedural due process rights of creditors in that it would be equivalent to nonbankruptcy foreclosure by secured creditor); *In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010); *In re Jolan, Inc.*, 403 B.R. 866, 869–70 (Bankr. W.D. Wash. 2009) (court holds that several state statutes would force a junior lienholder to accept less than full satisfaction of its claim thereby satisfying § 363(f)(5)' s 'hypothetical' "legal proceeding" requirement); *In re Grand Slam U.S.A., Inc.*, 178 B.R. at 869 (noting that, under Washington state law, there are legal and equitable proceedings in which a junior lienholder could be compelled to accept a money satisfaction, e.g. a senior secured party's disposition of collateral under the default remedies provided in Article 9 of Washington's UCC or a receiver's sale).

37. Like numerous other state statutes, under Tennessee state foreclosure law, a junior lienholder's interest may be extinguished upon foreclosure of a senior mortgage and sale of the subject property, and a junior lienholder may only receive proceeds of such a sale after prior liens have been paid in full. See *Third Nat'l Bank in Nashville v. McCord*, 688 S.W.2d 446, 448 (Tenn. Ct. App. 1985) (holding that foreclosure of mortgaged property by mortgagee extinguished junior lien held by bank, leaving no surplus from foreclosure sale to pay bank); *Andrews v. Fifth Third*

*Bank*, 228 S.W.3d 102, 113 (Tenn. Ct. App. 2007) (in state court action to determine priority of liens, holding that senior lienholder was "entitled [] to payment in full before any payments were made to creditors of lesser priority").

38. Thus, a legal or equitable proceeding (state law foreclosure) exists that could compel Capital One and other junior lienholders[10] to accept less than full money satisfaction of their interests (if there are not sufficient proceeds to pay such interests in full).

39. Should any junior lienholder object to the Sale, the Sale may nevertheless proceed, and the Property transfer to Buyer free and clear of such junior liens, pursuant to section 363(f)(5).

V. **FFB's Claim**

40. To the extent this Court is inclined to consider the substantive issue of the amount and priority of the various liens attaching to the Property and proceeds of the Sale at this time—which FFB asserts is procedurally improper, fails to provide FFB with requisite due process, and is unnecessary to approve the proposed Sale—FFB states that, as of December 10, 2025,[11] it will be entitled to payment in the total amount of $8,436,338.37, comprising $7,788,828.78 on account of Loan 1295 and $647,509.59 on account of Loan 1400.[12] *See* **Exhibit A**, *Declaration of Steven Panagouleas*, ¶¶ 14, 15, Ex. 1, Ex. 2. These amounts must be paid in full from the proceeds of the

---

[10] FFB understands and asserts that any existing mechanics liens or judgment liens are junior to its lien under Tennessee law.

[11] December 10, 2025 is the anticipated closing date of the Sale. FFB reserves its right to provide updated payoff calculations should the closing of the Sale and/or distribution of the Sale proceeds take place after December 10, 2025.

[12] The Debtor's reference to the contract rate in the Sale Motion is disingenuous. The Debtor has admitted it was in default at the time of each of the forbearance agreements, which would entitle FFB to, at a minimum, the default rates of interest under the Notes at 10.25% for Loan 1295 and 9.75% for Loan 1400. While FFB asserts and believes that the 12.00% forbearance agreement interest rate continues to apply to the loans, calculations of FFB's Claim at the default interest rates are referenced and included in **Exhibit A**, hereto, for the Court's reference. *See* **Exhibit A**, *Declaration of Steven Panagouleas*, ¶¶ 16, 17, Ex. 3, Ex. 4.

Sale before any junior lienholder receives payment on account of their liens. FFB further asserts that all other liens on the Property are junior to its existing lien.

## Joinder in U.S. Trustee Objection

41. To the extent consistent with the objections expressed herein, FFB also joins in the objection of the U.S. Trustee filed at Docket No. 160.

## Reservation of Rights

42. FFB reserves all rights to amend or supplement this objection in response to arguments raised by the Debtor or other parties in interest before and/or at the Sale hearing.

43. FFB reserves all rights to present evidence of its lien amount and priority at the Sale hearing or a future hearing on the issues.

## Conclusion

44. In light of the foregoing, FFB agrees it is appropriate for the Sale to proceed, but only subject to and as amended by the objections raised herein.

**WHEREFORE**, First Financial Bank, N.A. respectfully requests that the Court enter an order (i) approving sale of the Property; (ii) providing that liens on the Property shall attach to the proceeds from the sale in the same priority and to the same extent as they exist with respect to the Property; (iii) approving payment of the actual costs of sale only upon closing of the sale; and (iv) ordering that the remaining proceeds of the sale be held in a segregated account, and that no further distributions be made from such proceeds without written order of the Court or the prior written consent of all interested parties; and (v) providing such additional relief as the Court deems just and appropriate.

Dated: November 26, 2025

        Respectfully submitted,

                SPENCER FANE LLP

                By: /s/ Peter Riggs
                Mark Bogdanowicz
                Chase Fann
                Peter Riggs
                SPENCER FANE LLP
                1000 Walnut, Suite 1400
                Kansas City, MO 64106
                mbogdanowicz@spencerfane.com
                cfann@spencerfane.com
                priggs@spencerfane.com
                *Attorneys for First Financial Bank, N.A.*

## **CERTIFICATE OF SERVICE**

        I hereby certify that a true and correct copy of the foregoing document was filed electronically on November 26, 2025 and served via CM/ECF on all parties receiving electronic notice of such filing.

                By: /s/ Peter Riggs