## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Plaza Mariachi, LLC, | Case No. 3:24-bk-02441 |
| | Judge Hon. Charles M. Walker |
| Debtor. | Hearing Date: December 3, 2025<br>Hearing Time: 11:00 a.m. |

## REPLY IN FURTHER SUPPORT OF MOTION TO APPROVE SALE OF REAL PROPERTY; NOTICE OF REVISED SALE WATERFALL AND CAPITAL ONE AGREEMENT; AND OBJECTION TO AND REQUEST FOR DETERMINATION OF AMOUNT OF FIRST FINANCIAL BANK, N.A.'S SECURED CLAIM

Plaza Mariachi, LLC (the "Debtor"), by and through undersigned counsel, files this reply in further support of its motion to approve a sale of its real property [dkt. 158] (the "Sale Motion"), and in response and opposition to the limited objections filed by the United States Trustee [Dkt. 160] (the "UST Response") and First Financial Bank, N.A. [Dkt. 161] (the "FFB Response"). Since the Sale Motion was filed on November 5, 2025, the Debtor has obtained updated pay-off information regarding outstanding real property taxes, mechanic's liens, and judgment liens, many of which are held by creditors that did not file proofs of claim in the case. As a result, the Debtor now has a substantially more reliable estimate of the amounts necessary to satisfy all claims in the case in full. As demonstrated by the updated waterfall attached hereto as Exhibit 1, but for the agreement (described below) of Capital One, N.A. ("Capital One"), the sale proceeds would not be sufficient to pay all secured claims in full, let alone all administrative, priority and unsecured claims against the Debtor. The updated waterfall lists the amounts of each secured claim against

1

the Debtor's property in order of priority.

However, as more fully set forth below, notwithstanding that its secured claim totals at least $4,894,786.75, Capital One has agreed to (1) consent to the sale provided that it receives at least $4,500,000 from the sale of the property at closing, and (2) allow what is effectively a carve-out from its lien in the Debtor's real property (and the sale proceeds) sufficient to ensure that all lienholders junior to Capital One <u>and</u> all administrative, priority and unsecured creditors of the Debtor, will be paid in full from the sale, while also paying First Financial Bank, N.A. ("<u>FFB</u>") 100% of its principal and interest[1] calculated at the non-default note rates. The terms of the Capital One Agreement (defined below) are more fully set forth in Section I below.

FFB, the Debtor's senior secured creditor, despite enjoying a significant equity cushion throughout the case and receiving post-petition payments totaling $1,237,970.38 from the Debtor and non-debtor affiliate PM Realty Nashville, LLC, is not satisfied with being paid 100% of its principal and contract rate interest. Instead, FFB claims that it is owed additional post-petition interest of $783,613.23 <u>plus</u> post-petition attorneys' fees in the amount of $92,143.40 <u>plus</u> post-petition late fees in the amount of $3,500.[2]

---

[1]     *See* Exhibit 1 (Updated Waterfall), Exhibit 2 (Alternative FFB Loan 1295 Calculations), and Exhibit 3 (Alternative FFB Loan 1400 Calculations), attached hereto.

[2]     The post-petition interest sought by FFB is 228.6% of the contract rate set forth in FFB's Promissory Note for Loan 1295 and 252.6% of the contract rate set forth in FFB's Promissory Note for Loan 1400, absurd amounts for a secured creditor that has had 0% risk of non-payment from the moment the Debtor's case was filed. The post-petition interest sought by FFB is 117.1% of the <u>default rate</u> provided in FFB's Promissory Note for Loan 1295 and 123.1% of the <u>default rate</u> provided in FFB's Promissory Note for Loan 1400.

The Debtor objects to FFB's calculation of the amount of its secured claim, specifically, the additional post-petition interest, attorneys' fees, and late fees alleged by FFB for the first time in the FFB Response, and respectfully requests that the Court determine the amount of FFB's secured claim against the Debtor pursuant to Bankruptcy Rule 3012. Pursuant to Bankruptcy Code § 506(a), the Court has equitable discretion based on the facts and circumstances present in this case (none of which are in dispute) to set the rate of post-petition interest that may be collected by FFB (the non-default note rate is appropriate); equitable discretion to determine the reasonableness or lack thereof of the post-petition attorneys' fees sought by FFB; and equitable discretion to deny FFB's request for post-petition late fees. The Debtor submits that, based on the facts and circumstances of this case, the Court should deny FFB the $879,256.63 windfall that it is seeking. Doing so will not inure to the benefit of the Debtor, but instead will allow Capital One to receive a reasonable agreed-upon distribution on its $4,894,786.75 junior secured claim <u>and</u> facilitate the payment in full of all secured, administrative (including US Trustee's fees), priority and unsecured claims against the Debtor. A summary of the additional post-petition amounts asserted by FFB that are disputed by the Debtor is attached hereto as <u>Exhibit 4.</u>

The Debtor submits that the Capital One Agreement, which will facilitate the payment in full of all allowed secured claims against the Debtor, resolves the concerns raised by the US Trustee in the UST Response. In further support of this reply and the Sale Motion, the Debtor submits the following:

# I. THE DEBTOR'S AGREMENT WITH CAPITAL ONE ENSURES THAT SUFFICIENT FUNDS ARE AVAILABLE TO PAY ALL CLAIMS IN THE CASE IN FULL.

Based on the unique facts and circumstances present in this case, the Debtor and Capital One have reached an agreement that will allow the Sale to proceed with the Debtor (a) paying the other existing Closing Payments (including the existing Closing Payment to FFB) and the increased property tax payments at closing, and (b) paying at closing, or reserving funds estimated by the Debtor to allow full payment of, (i) the allowed claims of all other lienholders (which addresses the concerns raised in the UST Objection), (ii) the allowed administrative expense claims by estate professionals, (iii) unpaid UST fees (including UST fees that will be due resulting from the closing of the Sale), and (iv) all allowed priority and unsecured claims against the Debtor. The terms of this agreement (the "Capital One Agreement") between the Debtor and Capital One are as follows:

   a. Rather than requiring that the full amount of its secured claim be paid from the cash proceeds from the sale of the property (the "Sale Proceeds"), Capital One agrees to accept the following amounts from the Sale Proceeds (collectively, the "Capital One Release Payment"): (i) a revised Closing Payment in the amount of $4,500,000 payable to Capital One directly from escrow at the closing of the Sale (the "Revised Capital One Closing Payment"); and (ii) any excess funds in the Claim Reserve (defined below) after full payment of all other allowed claims, including administrative expense claims and UST fees.

   b. In return for the Revised Capital One Closing Payment in the amount of $4,500,000, Capital One agrees to release its liens in the Property being sold to Buyer. Capital One will retain its lien on the remaining Sale Proceeds after the revised Closing Payments have been made, including the Sale Proceeds used to fund the "Claim Reserve" described below.

   c. The Revised Capital One Closing Payment will be an indefeasible cash payment made directly to Capital One at, and as a condition of, the closing of the Sale. The Revised Capital One Closing Payment will not be subject

4

to any surcharge claim by the estate (which will be unnecessary given the agreement regarding the Claim Reserve).

d. The Debtor will hold the remaining Sale Proceeds after closing in a segregated "Claim Reserve" to be used by the Debtor to pay other claims, including, among others, administrative expense claims, as and to the extent those claims are allowed. Based on the Debtor's analysis, the Sales Proceeds that will fund the Claim Reserve should be sufficient to pay all allowed claims in the case. Although Capital One will retain its lien on the Sale Proceeds in the Claim Reserve, Capital One agrees that the Debtor may use the Claim Reserve to pay other allowed claims in the case, with excess funds (if any) paid to Capital One when the claim process has been completed.

e. Nothing in Capital One's agreement regarding the Capital One Release Payment or the Sale affects Capital One's claims, liens and/or other rights against parties other than the Debtor (including all other Settling Parties under the Janbakhsh Settlement Agreement), or Capital One's liens securing obligations under the Janbakhsh Settlement Agreement (other than the liens in the Property being sold to Buyer and the retained liens in the Claim Reserve funds).

The Debtor submits that the Capital One Agreement is in the best interests of the estate and should be approved to facilitate the sale of the property.

## II. **THE DEBTOR OBJECTS TO THE ADDITIONAL POST-PETITION INTEREST, ATTORNEYS' FEES AND LATE FEES ASSERTED BY FFB AND REQUESTS THAT THE COURT DETERMINE THE AMOUNT OF FFB'S SECURED CLAIM.**

FFB claims that it is entitled to $879,256.63 of post-petition interest, attorneys' fees and late fees over and above the 100% of principal and contract rate interest that the Debtor proposes to pay to FFB from the sale of the property. Despite FFB's suggestion to the contrary, there is no reason for the Debtor to file an adversary proceeding to challenge the extra post-petition interest, attorneys' fees and late fees asserted by FFB for the first time in the FFB response. The Debtor is not challenging the extent, validity or priority of FFB's liens. Pursuant to the *Agreed Order Approving Use of Cash Collateral and Granting*

5

*Related Relief* [Dkt. 78] (the "First Cash Collateral Order"), the Debtor stipulated to the perfection, extent, validity and priority of FFB's Deed of Trust, Assignment of Rents and Security Agreement with respect to the Property. However, the Debtor expressly reserved the right to object to the amount of the FFB secured claim, including, but not limited to any post-petition default rate interest, attorneys' fees and costs claimed by FFB. *Id.* at p. 3, ¶ H.

Until the FFB Response was filed, there was no reason for the Debtor to object to FFB's secured claim or file a motion to ask the Court to determine the amount of FFB's secured claim. As acknowledged by FFB, the Court certainly can determine the amount of FFB's secured claim under Bankruptcy Rule 3012 by motion or in connection with an objection to the claim. In this case, for efficiency sake, there is absolutely no reason why the discrete issue of the rate of post-petition interest allowed to FFB cannot be determined in conjunction with the approval of the sale of the property.

### A. The Amount of Post-Petition Interest Paid to an Over-Secured Creditor is Subject to the Court's Equitable Discretion Based on the Unique Facts and Circumstances of the Case.

Under Bankruptcy Code § 506(a), as an over secured creditor FFB is entitled to post-petition interest on its claim, but the rate of interest allowed is within the equitable discretion of the Court, subject to an "abuse of discretion" standard. *See In re Dow Corning Corp.*, 456 F.3d 668, 679–80 (6th Cir. 2006). As recognized by the Bankruptcy Court in *In re Perkins*, 2017 WL 439319 (Bankr. W.D. Kentucky 2017):

> The Supreme Court determined in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989), that an award of "fees, costs, or charges" is dictated by the terms of the loan agreement. However, the award of interest

is not. Bankruptcy courts have construed the *Ron Pair* decision to require analyzing default rates based on the facts and equities of each case. *Matter of Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir. 1994), *citing In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452, 457 (Bankr. D. Md. 1993) and *In re DWS Investments, Inc.*, 121 B.R. 845, 849 (Bankr. C.D. Cal. 1990). Case law establishes that a presumption arises in favor of the contractual rate of interest that is subject to rebuttal based on equitable considerations. The presumption is rebutted where the evidence establishes that the default rate is significantly higher than the pre-default rate without any justification being offered for the difference. *Matter of Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir. 1994). *See, e.g. In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452 (Bankr. D. Md. 1993) (wherein the court refused to award a contract default rate of interest which was 36% higher than the pre-default rate which would have entitled the creditor to recover twice for the same losses) and *In re Hollstrom*, 133 B.R. 535, 539 (Bankr. D. Colo. 1991) (wherein the court rejected a contract default rate of 36% where no evidence was presented to show that this rate was common in the marketplace at the time of the transaction). Other considerations include whether the secured creditor runs a realistic risk of nonpayment, whether the plan proposes a relatively quick orderly liquidation and whether the contract rate of interest was a prevailing market rate at the time of default. *In re W.S. Sheppley & Co.*, 62 B.R. 271, 278–279 (Bankr. N.D. Iowa 1986).

*Id.* at p. *1.[3]

In *Perkins*, *supra*, under facts eerily similar to the instant case, the bankruptcy court denied the secured creditor's request for default rate interest that would have doubled (from 5% to 10%) the contract rate of interest in a case where the creditor's risk of non-payment had been low throughout the case, and application of the default rate of interest would "materially decrease payment, if not completely eviscerate payments to the unsecured creditors in the case." *Id.* at p. *2. The court held that the equities of the case simply did not favor application of the default rate and denied the secured creditor's request.

---

[3] A copy of the In re Perkins decision is attached hereto as Exhibit 5 for the Court's convenience.

7

The equities in this case mitigate heavily against allowing the excessive post-petition interest sought by FFB. As an initial matter, FFB is trying to get paid at an interest rate that is 228.6 – 252.6% of the contract interest rate provided in FFB's notes and 117.1 – 123.1% of the <u>default rates</u> provided in FFB's notes. The Loan 1295 note provides for a contract rate of 5.25% and a default rate of 10.25%. The Loan 1400 note provides for a contract rate of 4.75% and a default rate of 9.75%. FFB is attempting to charge the Debtor post-petition interest on both loans at the rate of 12% per annum without any contractual basis for doing so.

At the time that the First Cash Collateral Order was entered, the Debtor already had begun paying FFB monthly interest payments at then non-default contract rates under the Promissory Notes for FFB Loan 1295 (5.25%) and Loan 1400 (4.75%). At the time, FFB stipulated that the Debtor was "current on all post-petition Interest Payments to FFB." *Id.* at pp. 3-4, ¶ K. FFB never took the position (as it did for the first time in the FFB Response) that its contract rate of interest on both loans was 12%, a rate well above the default rates set forth in the Promissory Notes for Loan 1295 (10.25%) and Loan 1400 (9.75%).

What FFB did not disclose in the FFB Response was that the 12% rate that it apparently was charging up until the Petition Date, and is trying to charge the Debtor now, was a temporary rate agreed to by the parties during the term of a prepetition forbearance period. FFB attached to its proof of claim (Claim 8-1) in the case, its original forbearance agreements for Loans 1295 and 1400, each dated March 14, 2020, and the seventh amendments to those forbearance agreements, each dated January 12, 2024. The original forbearance agreement for Loan 1295 contained the following provision:

8

> **Interest During Forbearance Period.** During the Forbearance Period, interest shall accrue on the Indebtedness owed under the Note at the Default Rate of Interest provided by the Note, which is ten and one-quarter percent (10.25%) per annum, and this rate shall be calculated on the basis of a 360 day year for actual days elapsed. The Parties agree that this Default Rate shall commence and be effective on March 14, 2020.

*See* Claim 8-1, pp. 188-189 of 226 (Loan 1295) (bold in original). The original forbearance agreement for Loan 1400 included the same provision, except that the default rate for Loan 1400 is 9.75% per annum. *Id.* at pp. 211 of 226.

The seventh amendment to the forbearance agreement for Loan 1295 contained the following provision:

> <u>Interest During Forbearance Period.</u> Under this Seventh Amendment, interest shall continue to accrue on the Indebtedness at the rate of twelve percent (12%) per annum, calculated on the basis of a 360 day year for actual days elapsed.

*See* Claim 8-1 at p. 200 of 226.

The seventh amendment to forbearance agreement for Loan 1400 includes an identical provision. Both documents provide that the 12% rate will be the rate charged "during the forbearance period." The forbearance period under both forbearance agreements terminated on April 5, 2024. *Id.* at pp. 200 & 222. FFB initiated foreclosure proceedings on June 4, 2024. The Debtor filed this case on July 1, 2024 to avoid forfeiting (what has turned out to be) almost $5.0 million of additional value to FFB (funds that under the proposed sale and the Capital One Agreement now will be available to pay other creditors in the case).

Whether or not the Court determines that FFB should be entitled to collect contract interest or default interest under its notes, what is abundantly clear is that there is no

contractual basis to support FFB's brazen attempt to charge interest on both loans at the rate of 12% per annum ($208,260 more interest than would be allowed under even the highest possible calculation of interest under FFB's notes) and clear evidence of inequitable conduct by FFB.

Additional facts and circumstances (including many of the same factors relied upon by the court in *Perkins*) mitigate against allowing FFB to collect post-petition default interest in this case:

- FFB had effectively no risk of non-payment in this case based upon a $5.0 million equity cushion and its receipt of post-petition payments totaling $1,237,970.38.

- The FFB default rates would double the amount of interest being collected by FFB with no justification (other than a windfall to FFB) for the excess payments.[4]

- Unlike FFB, that voluntarily loaned money to the Debtor, Capital One's claim arises out of this Court's *Order (I) Approving Settlement Agreement Among Mark Janbakhsh, Entities Owned And Controlled By Mark Janbakhsh, And Capital One, National Association, And (II) Granting Related Relief* [Admin. Dkt. 812] entered in the Bankruptcy Cases of the Auto Masters Debtors, which settled Capital One's claims incurred as a result of a massive fraud by the Auto Masters Debtors.

- Unlike FFB, Capital One has not been paid, and is not attempting to be paid, any post-petition interest or attorneys' fees on its secured claim.

---

[4]     In addition to default rate interest, FFB is seeking to collect $92,143.40 of attorneys' fees and costs in a case where it quite literally has done almost nothing but sit back and collect payments.

- Payment of default rate interest to FFB (which would preclude the Capital One Agreement) will eviscerate more than $800,000 that otherwise will be available in the case to pay junior lienholders, administrative (including US Trustee's fees), priority and unsecured claims in full. The case will swing from full payment to administratively insolvent. The Debtor should not be required to pay penalty interest and late fees to FFB at the expense of other estate creditors.

In short, the unique facts and circumstances of this case mitigate strongly against the Court approving FFB's request for default rate interest. FFB will be paid in full (100% of principal and interest), and that is all that is required to be paid.

**B.** **Under Sixth Circuit Law, an Over-Secured Creditor's Post-Petition Attorneys' Fees Under § 506(b) Must Be Reasonable, and the Court Has Broad Discretion to Reduce the Fees Requested.**

Bankruptcy Code § 506(b) allows an over-secured creditor to recover attorneys' fees, costs, and charges only to the extent they are reasonable. 11 U.S.C. § 506(b). The Sixth Circuit has long held that reasonableness is a statutory limitation that bankruptcy courts must independently enforce, even where the contract purports to allow the creditor to recover "all" fees.

In *Manufacturers National Bank v. Auto Specialties Manufacturing Co. (In re Auto Specialties Manufacturing Co.)*, 18 F.3d 358, 362 (6th Cir. 1994), the Sixth Circuit held that while an over-secured creditor is entitled to seek attorneys' fees provided for in its loan documents, "the bankruptcy court … may exercise its broad discretion in determining the exact amount of the fee award, according to the reasonableness of the Bank's request under Section 506(b)." The court emphasized that even when a creditor is contractually entitled

to seek fees, the bankruptcy court has independent authority under § 506(b) to scrutinize and limit those fees to what is objectively reasonable. *Id.*; *see*, *also*, *In re Brunswick Apartments of Trumbull County, Ltd.*, 215 B.R. 520, 524–25 (B.A.P. 6th Cir. 1998) ("Section 506 … grants broad discretion to the bankruptcy court to determine the reasonableness of the fees requested.") The BAP reiterated that "it is within the bankruptcy court's discretion to determine the reasonableness of fees." Id.

The Sixth Circuit BAP reinforced these principles in *In re Scarlet Hotels, LLC*, 392 B.R. 698, 705–06 (B.A.P. 6th Cir. 2008):

> This provision is not, however, a blank check for oversecured creditors to act without regard to any limits. *In re Irick*, 216 B.R. 433 (Bankr.E.D.Cal. 1997) ("A creditor who fails to heed § 506(b)'s warning that only reasonable costs can be recovered does so at substantial risk."). The fees must be reasonable. "Reasonable" fees are those that are "necessary to the collection and protection of a creditor's claim," and may include "participation in the bankruptcy proceeding until the collateral is sold, a plan is confirmed or the case is converted or dismissed." *In re Kroh Bros. Dev. Co.*, 105 B.R. 515, 521 (Bankr.W.D.Mo. 1989); *see also In re Auto Specialties Mfg. Co.*, 18 F.3d 358, 360 (6th Cir.1994) (oversecured creditors are entitled to reasonable attorneys fees). In addition, courts consider whether a creditor's actions are the kind of reasonable action a similarly situated creditor would have taken. *See Ryker v. Current*, 338 B.R. 642, 651 (D.N.J.2006).

*Id.*

Based on the foregoing: (1) FFB bears the burden to show that its requested post-petition fees are reasonable; (2) the Court has broad discretion to limit, reduce, or disallow fees that are excessive, duplicative, unnecessary, or disproportionate; and (3) Bankruptcy Code § 506(b)'s reasonableness requirement is independent of the contract, meaning the contract does not control the amount awarded. In this case, the FFB Response includes a Declaration of Debt, which makes no mention of any attorneys' fees incurred by FFB post-

petition with the exception of a line item on Exhibits 1 and 3 that states:

"Attorneys' fees        $144,579.10".

*See* FFB Response, Dkt. 161-1 at pp. 8 & 12 of 14.

There is no distinction between pre-petition or post-petition attorneys' fees. But, FFB apparently simply added $92,143.40 to the $52,435.70 of prepetition attorneys' fees listed in its proof of claim. *See* Claim 8-1, Part 2, p. 1. FFB did not submit a declaration or detailed time records to allow the Court to determine the reasonableness or lack thereof of the fees being claimed. Based on the docket in the case, (other than occasional telephone conferences with counsel for the Debtor and collecting the $55,000 monthly adequate protection payments from the Debtor and $35,000 monthly payments from the non-debtor guarantors) it appears that FFB's activity in this case has been limited to:

- Filing Notices of Appearance [Dkt. 8 and 9] on 7/31/2024;

- Filing a Proof of Claim [Claim 8-1] on 11/25/2024;

- Negotiating an initial Cash Collateral Order, which was later extended twice [Dkt. 74, 93, and 143];

- Filing a Motion for 2004 Examinations seeking financial information on a number of non-debtor guarantors (an expense unrelated to FFB's efforts to collect its debt against the Debtor) [Dkt. 118] on July 15, 2025;

- Filing a Motion for 2004 Examination for Bank of America and Pinnacle Bank (again, seeking financial information on a number of non-debtor guarantors) [Dkt. 124] on July 18, 2025; and

13

- Filing the FFB Response [Dkt. 161] on 11/26/2025.

Without the benefit of any detailed time records from counsel for FFB, or an attorneys' fee affidavit, that level of activity does not come close to justifying a $92,143.40 fee request, particularly in a case where FFB had a $5,000,000 equity cushion and received $1,237,970.38 of debt service payments. The Debtor submits that FFB has failed to carry its burden of establishing the reasonableness of its fees; and the Court should exercise its discretion to limit FFB's post-petition attorneys' fees to no more than $25,000.

## III.  CONCLUSION.

With the sole exception of Mr. Don Wood, who the Debtor recently discovered holds a judgment lien dating back to 2020 in the face amount of $700, notice of the Sale Motion was mailed to all of the Debtor's creditors and all parties-in-interest (including all lienholders). With the exception of the limited objections filed by FFB and the US Trustee, there is no opposition to the Sale Motion. The Sale Motion stated that all creditors would be paid in full. With the Capital One Agreement that is still possible, unless FFB's request for an additional $879,256.63 in excessive interest, attorneys' fees and late charges is granted. The Debtor believes that FFB's request for default rate interest, fees and costs can and should be considered and denied expeditiously in conjunction with the Court's consideration of the Sale Motion. There are no disputed fact issues here. The facts and circumstances of this case are well known to the Court and all parties. All that is required if for the Court to exercise is equitable discretion to determine whether or not it believes that equity favors awarding FFB the extra interest, fees and charges it seeks. If the Court disagrees with the Debtor and awards FFB the excessive interest, fees and costs it seek,

14

this case changes dramatically, becomes administratively insolvent and junior lienholder will go unpaid. Creditors should know whether or not that is the case before the sale is approved, not after.

WHEREFORE, based on all of the foregoing, and the entire record before the Court, the Debtor respectfully requests that the Court deny FFB's belated request for default rate interest, award FFB no more than $25,000 in attorneys' fees and costs, deny FFB's request for $3,500 of post-petition late fees, and grant the Sale Motion as modified by this reply, and the Capital One Agreement.

Dated: December 1, 2025.

Respectfully Submitted,

Burgess Law, LLC dba The Burgess Law Group

By: _/s/Todd A. Burgess, Esq._
    Todd A. Burgess (AZ SBN 019013)
    (Admitted *pro hace vice*)
    Janel M. Glynn (AZ SBN 025497)
    (Admitted *pro hace vice*)
    THE BURGESS LAW GROUP
    3131 E. Camelback Road, Suite 224
    Phoenix, AZ 85016
    Tel. 602-806-2100
    Email: todd@theburgesslawgroup.com
    Email: janel@theburgesslawgroup.com
    *Bankruptcy Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *REPLY IN FURTHER SUPPORT OF MOTION TO APPROVE SALE OF REAL PROPERTY; NOTICE OF REVISED SALE WATERFALL AND CAPITAL ONE AGREEMENT; AND OBJECTION TO AND REQUEST FOR DETERMINATION OF AMOUNT OF FIRST FINANCIAL BANK, N.A.'S SECURED CLAIM* was filed electronically on December 1, 2025 and served via First Class U.S. Mail pursuant to Local Rule 2014-1 to the United States Trustee and all creditors and interested parties on the Debtor's most up-to-date Master Mailing List.

*/s/Todd A. Burgess, Esq.*
Counsel for Debtor

16

**Exhibit 1**

**Plaza Mariachi, LLC**
**Estimated Waterfall**

| Assumes Sale date 12/10/2025 | | $ | | |
|---|---|---|---|---|
| Purchase Price | | $ | 13,450,000.00 | |
| Tenant Security Deposits ($44,487) | | $ | - | *PM Realty Nashville Obligation* |
| Estimated 2025 Property Tax Prorations | | $ | 16,409.99 | *Updated Based on Estimated Settlement Statement* |
| Seller's Broker Commission @ 1.49% | | $ | (200,000.00) | |
| Title and Escrow | | $ | (28,222.00) | *Updated Based on Estimated Settlement Statement* |
| | Subtotal | $ | 13,238,187.99 | |
| **Secured Claims in Order of Priority** | | | | |
| 2023-2025 Property Taxes 3955 Nolensville Pike | POC 1-2 | $ | (446,810.31) | *Updated Based on Estimated Settlement Statement* |
| 2023 - 2025 Property Taxes 3941 Nolensville Pike | POC 2-2 | $ | (257,993.97) | *Updated Based on Estimated Settlement Statement* |
| First Financial Bank Loan 1295 Payoff (Non-Default Note Rate 5.25%) | POC 8-1 | $ | (6,998,266.21) | *Calculated at Non-Default Contract Rate of Interest* |
| First Financial Bank Loan 1400 Payoff (Non-Default Note Rate 4.75%) | POC 8-1 | $ | (559,117.80) | *Calculated at Non-Default Contract Rate of Interest* |
| Liberty HVAC & Energy Services, Inc. | POC 4-1 & 5-1 | $ | (13,102.36) | *20180611-0055476 & 20191126-0122276 (POCs are duplicative* |
| Equipment Finders, Inc. of Tennessee | | $ | (11,742.97) | *20181106-0110076 & 20180718-0070165* |
| Interstate AC Service LLC | | $ | (24,009.55) | *20190905-0089920 & 20200330-0034141* |
| Capital One | POC 6-1 | $ | (4,500,000.00) | *20191021-0107414; Capital One Agreed Upon Conditional Release Price* |
| Don Wood Judgment | | $ | (1,118.66) | *20200619-0064889* |
| State of Tennessee Department of Revenue Tax Lien | | $ | (38,458.73) | *20201028-0124437* |
| Mid-South Maintenance of TN, Inc. | POC 7-1 | $ | (5,891.82) | *20240531-0040593* |
| IRS Tax Lien - 941 Taxes (4,495.75) | | $ | - | *20250902-0069708 (PM Realty Nashville Obligation - Lien recorded Post-petition* |
| | Subtotal | $ | 381,675.62 | |
| **Administrative, Priority and Unsecured Claims** | | | | |
| Estimated Unpaid Administrative Professional Fees | | $ | (186,425.00) | |
| Estimated Unpaid Admininstrative UST Quarterly Fees | | $ | (109,200.00) | |
| Tennessee Department of Revenue (Unsecured) | POC 3-2 | $ | (25,000.00) | *May be duplicative of Tennessee DOR Tax Lien* |
| Tenn. Dept. Environment and Conservation ($68,736.50) | POC 9-1 | $ | - | *Estimated Clean-up Costs Now by State Dry Cleaner Fund Program* |
| **Contingency/Reserve** | | **$** | **61,050.62** | *Any excess funds remaining in the estate after all other claims have been paid revert to CapOne* |

## Exhibit 2

| Petition Date | 7/1/2024 | Principal | $7,024,339.04 | |
|---|---|---|---|---|
| | | Interest | $200,938.80 | |
| | | Attorneys' Fees | $52,435.70 | |
| | | | $7,277,713.54 | |
| Non-Default Note Rate | | | 5.25% | 360 day year |

| Date | Description | Advance (+) | Payment (−) | Days Since Prior | Interest Accrued (+) | Principal Balance | Interest Balance | Fees |
|---|---|---|---|---|---|---|---|---|
| 7/1/24 | Balance Forward | | | | | $7,024,339.04 | $200,938.80 | $52,435.70 |
| 8/6/24 | Interest | | | 36.00 | $36,877.78 | | $237,816.58 | |
| 8/6/24 | Payment | | $34,323.46 | | | | $203,493.12 | |
| 9/5/24 | Interest | | | 30.00 | $30,731.48 | | $234,224.60 | |
| 9/5/24 | Payment | | $34,323.46 | | | | $199,901.14 | |
| 10/16/24 | Interest | | | 41.00 | $41,999.69 | | $241,900.84 | |
| 10/16/24 | Payment | | $34,323.46 | | | | $207,577.38 | |
| 11/19/24 | Interest | | | 34.00 | $34,829.01 | | $242,406.39 | |
| 11/19/24 | Payment | | $55,000.00 | | | | $187,406.39 | |
| 12/10/24 | Interest | | | 21.00 | $21,512.04 | | $208,918.43 | |
| 12/10/24 | Payment | | $55,000.00 | | | | $153,918.43 | |
| 1/13/25 | Interest | | | 34.00 | $34,829.01 | | $188,747.44 | |
| 1/13/25 | Payment | | $55,000.00 | | | | $133,747.44 | |
| 2/10/25 | Interest | | | 28.00 | $28,682.72 | | $162,430.16 | |
| 2/10/25 | Payment | | $55,000.00 | | | | $107,430.16 | |
| 3/10/25 | Interest | | | 28.00 | $28,682.72 | | $136,112.88 | |
| 3/10/25 | Payment | | $55,000.00 | | | | $81,112.88 | |
| 4/11/25 | Interest | | | 32.00 | $32,780.25 | | $113,893.13 | |
| 4/11/25 | Payment | | $55,000.00 | | | | $58,893.13 | |
| 5/12/25 | Interest | | | 31.00 | $31,755.87 | | $90,648.99 | |
| 5/12/25 | Payment | | $55,000.00 | | | | $35,648.99 | |
| 6/10/25 | Interest | | | 29.00 | $29,707.10 | | $65,356.10 | |
| 6/10/25 | Payment | | $55,000.00 | | | | $10,356.10 | |
| 7/10/25 | Interest | | | 30.00 | $30,731.48 | | $41,087.58 | |
| 7/10/25 | Payment | | $55,000.00 | | | $7,010,426.62 | -$13,912.42 | |
| 8/13/25 | Interest | | | 34.00 | $34,760.03 | | $34,760.03 | |
| 8/13/25 | Payment | | $55,000.00 | | | $6,990,186.65 | -$20,239.97 | |
| 9/10/25 | Interest | | | 28.00 | $28,543.26 | | $28,543.26 | |
| 9/10/25 | Payment | | $55,000.00 | | | $6,963,729.91 | -$26,456.74 | |
| 10/10/25 | Interest | | | 30.00 | $30,466.32 | | $30,466.32 | |
| 10/10/25 | Payment | | $55,000.00 | | | $6,939,196.23 | -$24,533.68 | |
| 11/11/25 | Interest | | | 32.00 | $32,382.92 | | $32,382.92 | |
| 11/11/25 | Payment | | $55,000.00 | | | $6,916,579.15 | -$22,617.08 | |
| 12/10/25 | Interest | | | 29.00 | $29,251.37 | | $29,251.37 | $52,435.70 |
| | | | | | | **Total** | **$6,998,266.21** | |
| | | | | | | Per Diem | $1,008.67 | |

**Alternative FFB Loan 1295 Calculations**

| | | | | | | |
|---|---|---|---|---|---|---|
| Petition Date | 7/1/2024 | Principal | $7,024,339.04 | | per diem | $1,999.99 |
| | | Interest | $200,938.80 | | | |
| | | Attorneys' Fees | $52,435.70 | | | |
| | | | $7,277,713.54 | | | |
| Note Default Rate = 5.25 + 5.0 | | | 10.25% | 360 day year | | |

| Date | Description | Advance (+) | Payment (−) | Days Since Prior | Interest Accrued (+) | Principal Balance | Interest Balance | Fees |
|---|---|---|---|---|---|---|---|---|
| 7/1/24 | Balance Forward | | | | | $7,024,339.04 | $200,938.80 | $52,435.70 |
| 8/6/24 | Interest | | | 36.00 | $71,999.48 | | $272,938.28 | |
| 8/6/24 | Payment | | $34,323.46 | | | | $238,614.82 | |
| 9/5/24 | Interest | | | 30.00 | $59,999.56 | | $298,614.38 | |
| 9/5/24 | Payment | | $34,323.46 | | | | $264,290.92 | |
| 10/16/24 | Interest | | | 41.00 | $81,999.40 | | $346,290.32 | |
| 10/16/24 | Payment | | $34,323.46 | | | | $311,966.86 | |
| 11/19/24 | Interest | | | 34.00 | $67,999.50 | | $379,966.36 | |
| 11/19/24 | Payment | | $55,000.00 | | | | $324,966.36 | |
| 12/10/24 | Interest | | | 21.00 | $41,999.69 | | $366,966.06 | |
| 12/10/24 | Payment | | $55,000.00 | | | | $311,966.06 | |
| 1/13/25 | Interest | | | 34.00 | $67,999.50 | | $379,965.56 | |
| 1/13/25 | Payment | | $55,000.00 | | | | $324,965.56 | |
| 2/10/25 | Interest | | | 28.00 | $55,999.59 | | $380,965.15 | |
| 2/10/25 | Payment | | $55,000.00 | | | | $325,965.15 | |
| 3/10/25 | Interest | | | 28.00 | $55,999.59 | | $381,964.75 | |
| 3/10/25 | Payment | | $55,000.00 | | | | $326,964.75 | |
| 4/11/25 | Interest | | | 32.00 | $63,999.53 | | $390,964.28 | |
| 4/11/25 | Payment | | $55,000.00 | | | | $335,964.28 | |
| 5/12/25 | Interest | | | 31.00 | $61,999.55 | | $397,963.83 | |
| 5/12/25 | Payment | | $55,000.00 | | | | $342,963.83 | |
| 6/10/25 | Interest | | | 29.00 | $57,999.58 | | $400,963.40 | |
| 6/10/25 | Payment | | $55,000.00 | | | | $345,963.40 | |
| 7/10/25 | Interest | | | 30.00 | $59,999.56 | | $405,962.97 | |
| 7/10/25 | Payment | | $55,000.00 | | | | $350,962.97 | |
| 8/13/25 | Interest | | | 34.00 | $67,999.50 | | $418,962.47 | |
| 8/13/25 | Payment | | $55,000.00 | | | | $363,962.47 | |
| 9/10/25 | Interest | | | 28.00 | $55,999.59 | | $419,962.06 | |
| 9/10/25 | Payment | | $55,000.00 | | | | $364,962.06 | |
| 10/10/25 | Interest | | | 30.00 | $59,999.56 | | $424,961.63 | |
| 10/10/25 | Payment | | $55,000.00 | | | | $369,961.63 | |
| 11/11/25 | Interest | | | 32.00 | $63,999.53 | | $433,961.16 | |
| 11/11/25 | Payment | | $55,000.00 | | | | $378,961.16 | |
| 12/10/25 | Interest | | | 29.00 | $57,999.58 | $7,024,339.04 | $436,960.74 | $52,435.70 |

| | | | | | Total | $7,513,735.48 |
|---|---|---|---|---|---|---|
| | | | | | Per Diem | $1,999.99 |

**Alternative FFB Loan 1295 Calculations**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Petition Date | 7/1/2024 | Principal | $7,024,339.04 | | per Diem | $2,341.45 | | |
| | | Interest | $200,938.80 | | | | | |
| | | Attorneys' Fees | $52,435.70 | | | | | |
| | | | $7,277,713.54 | | | | | |
| Forbearance Rate | | 12.00% | | 360 day year | | | | |

| Date | Description | Advance (+) | Payment (−) | Days Since Prior | Interest Accrued (+) | Principal Balance | Interest Balance | Fees |
|---|---|---|---|---|---|---|---|---|
| 7/1/24 | Balance Forward | | | | | $7,024,339.04 | $200,938.80 | $52,435.70 |
| 8/6/24 | Interest | | | 36.00 | $84,292.07 | | $285,230.87 | |
| 8/6/24 | Payment | | $34,323.46 | | | | $250,907.41 | |
| 9/5/24 | Interest | | | 30.00 | $70,243.39 | | $321,150.80 | |
| 9/5/24 | Payment | | $34,323.46 | | | | $286,827.34 | |
| 10/16/24 | Interest | | | 41.00 | $95,999.30 | | $382,826.64 | |
| 10/16/24 | Payment | | $34,323.46 | | | | $348,503.18 | |
| 11/19/24 | Interest | | | 34.00 | $79,609.18 | | $428,112.35 | |
| 11/19/24 | Payment | | $55,000.00 | | | | $373,112.35 | |
| 12/10/24 | Interest | | | 21.00 | $49,170.37 | | $422,282.73 | |
| 12/10/24 | Payment | | $55,000.00 | | | | $367,282.73 | |
| 1/13/25 | Interest | | | 34.00 | $79,609.18 | | $446,891.90 | |
| 1/13/25 | Payment | | $55,000.00 | | | | $391,891.90 | |
| 2/10/25 | Interest | | | 28.00 | $65,560.50 | | $457,452.40 | |
| 2/10/25 | Payment | | $55,000.00 | | | | $402,452.40 | |
| 3/10/25 | Interest | | | 28.00 | $65,560.50 | | $468,012.90 | |
| 3/10/25 | Payment | | $55,000.00 | | | | $413,012.90 | |
| 4/11/25 | Interest | | | 32.00 | $74,926.28 | | $487,939.18 | |
| 4/11/25 | Payment | | $55,000.00 | | | | $432,939.18 | |
| 5/12/25 | Interest | | | 31.00 | $72,584.84 | | $505,524.02 | |
| 5/12/25 | Payment | | $55,000.00 | | | | $450,524.02 | |
| 6/10/25 | Interest | | | 29.00 | $67,901.94 | | $518,425.96 | |
| 6/10/25 | Payment | | $55,000.00 | | | | $463,425.96 | |
| 7/10/25 | Interest | | | 30.00 | $70,243.39 | | $533,669.35 | |
| 7/10/25 | Payment | | $55,000.00 | | | | $478,669.35 | |
| 8/13/25 | Interest | | | 34.00 | $79,609.18 | | $558,278.53 | |
| 8/13/25 | Payment | | $55,000.00 | | | | $503,278.53 | |
| 9/10/25 | Interest | | | 28.00 | $65,560.50 | | $568,839.03 | |
| 9/10/25 | Payment | | $55,000.00 | | | | $513,839.03 | |
| 10/10/25 | Interest | | | 30.00 | $70,243.39 | | $584,082.42 | |
| 10/10/25 | Payment | | $55,000.00 | | | | $529,082.42 | |
| 11/11/25 | Interest | | | 32.00 | $74,926.28 | | $604,008.70 | |
| 11/11/25 | Payment | | $55,000.00 | | | | $549,008.70 | |
| 12/10/25 | Interest | | | 29.00 | $67,901.94 | $7,024,339.04 | $616,910.64 | $52,435.70 |
| | | | | | **Total** | | **$7,693,685.38** | |
| | | | | | Per Diem | | $2,341.45 | |

**Exhibit 3**

**Alternative FFB Loan 1400 Calculations**

| Petition Date | 7/1/2024 | Principal | $907,446.75 |
|---|---|---|---|
| | | Interest | $15,729.08 |
| | | Attorneys' Fees | $2,750.00 |
| | | | $925,925.83 |
| **Non-Default Note Rate** | | | **4.75%** |

| Date | Description | Advance (+) | Payment (−) | Days Since Prior | Interest Accrued (+) | Principal Balance | Interest Balance | Fees |
|---|---|---|---|---|---|---|---|---|
| 7/1/24 | Balance Forward | | | | | $907,446.75 | $15,729.08 | $2,750.00 |
| 11/19/24 | Interest | | | 141.00 | $16,882.29 | | $32,611.37 | |
| 11/19/24 | Payment | | $35,000.00 | | | | -$2,388.63 | |
| 12/13/24 | Interest | | | 24.00 | $2,873.58 | | $484.95 | |
| 12/13/24 | Payment | | $35,000.00 | | | $872,931.70 | -$34,515.05 | |
| 1/14/25 | Interest | | | 32.00 | $3,685.71 | | $3,685.71 | |
| 1/14/25 | Payment | | $35,000.00 | | | $841,617.41 | -$31,314.29 | |
| 2/12/25 | Interest | | | 29.00 | $3,220.36 | | $3,220.36 | |
| 2/12/25 | Payment | | $35,000.00 | | | $809,837.77 | -$31,779.64 | |
| 3/11/25 | Interest | | | 27.00 | $2,885.05 | | $2,885.05 | |
| 3/11/25 | Payment | | $35,000.00 | | | $777,722.82 | -$32,114.95 | |
| 4/16/25 | Interest | | | 36.00 | $3,694.18 | | $3,694.18 | |
| 4/16/25 | Payment | | $35,000.00 | | | $746,417.00 | -$31,305.82 | |
| 5/13/25 | Interest | | | 27.00 | $2,659.11 | | $2,659.11 | |
| 5/13/25 | Payment | | $35,000.00 | | | $714,076.11 | -$32,340.89 | |
| 6/13/25 | Interest | | | 31.00 | $2,920.77 | | $2,920.77 | |
| 6/13/25 | Payment | | $35,000.00 | | | $681,996.88 | -$32,079.23 | |
| 7/10/25 | Interest | | | 27.00 | $2,429.61 | | $2,429.61 | |
| 7/10/25 | Payment | | $35,000.00 | | | $649,426.49 | -$32,570.39 | |
| 8/11/25 | Interest | | | 32.00 | $2,742.02 | | $2,742.02 | |
| 8/11/25 | Payment | | $35,000.00 | | | $617,168.52 | -$32,257.98 | |
| 9/10/25 | Interest | | | 30.00 | $2,442.96 | | $2,442.96 | |
| 9/10/25 | Payment | | $35,000.00 | | | $584,611.48 | -$32,557.04 | |
| 10/10/25 | Interest | | | 30.00 | $2,314.09 | | $2,314.09 | |
| 10/10/25 | Payment | | $35,000.00 | | | $551,925.56 | -$32,685.91 | |
| 12/10/25 | Interest | | | 61.00 | $4,442.23 | $551,925.56 | | $2,750.00 |
| | | | | | **Total** | **$559,117.80** | | |
| | | | | | Per Diem | $72.82 | | |

**Alternative FFB Loan 1400 Calculations**

| Petition Date | 7/1/2024 | | | |
|---|---|---|---|---|
| | | Principal | $907,446.75 | |
| | | Interest | $15,729.08 | |
| | | Attorneys' Fees | $2,750.00 | |
| | | | $925,925.83 | |
| **Note Default Rate 4.75 + 5.0** | | | **9.75%** | |

| Date | Description | Advance (+) | Payment (−) | Days Since Prior | Interest Accrued (+) | Principal Balance | Interest Balance | Fees |
|---|---|---|---|---|---|---|---|---|
| 7/1/24 | Balance Forward | | | | | $907,446.75 | $15,729.08 | $2,750.00 |
| 11/19/24 | Interest | | | 141.00 | $34,653.12 | | $50,382.20 | |
| 11/19/24 | Payment | | $35,000.00 | | | | $15,382.20 | |
| 12/13/24 | Interest | | | 24.00 | $5,898.40 | | $21,280.61 | |
| 12/13/24 | Payment | | $35,000.00 | | | $893,727.36 | -$13,719.39 | |
| 1/14/25 | Interest | | | 32.00 | $7,745.64 | | $7,745.64 | |
| 1/14/25 | Payment | | $35,000.00 | | | $866,472.99 | -$27,254.36 | |
| 2/12/25 | Interest | | | 29.00 | $6,805.42 | | $6,805.42 | |
| 2/12/25 | Payment | | $35,000.00 | | | $838,278.42 | -$28,194.58 | |
| 3/11/25 | Interest | | | 27.00 | $6,129.91 | | $6,129.91 | |
| 3/11/25 | Payment | | $35,000.00 | | | $809,408.33 | -$28,870.09 | |
| 4/16/25 | Interest | | | 36.00 | $7,891.73 | | $7,891.73 | |
| 4/16/25 | Payment | | $35,000.00 | | | $782,300.06 | -$27,108.27 | |
| 5/13/25 | Interest | | | 27.00 | $5,720.57 | | $5,720.57 | |
| 5/13/25 | Payment | | $35,000.00 | | | $753,020.63 | -$29,279.43 | |
| 6/13/25 | Interest | | | 31.00 | $6,322.24 | | $6,322.24 | |
| 6/13/25 | Payment | | $35,000.00 | | | $724,342.86 | -$28,677.76 | |
| 7/10/25 | Interest | | | 27.00 | $5,296.76 | | $5,296.76 | |
| 7/10/25 | Payment | | $35,000.00 | | | $694,639.62 | -$29,703.24 | |
| 8/11/25 | Interest | | | 32.00 | $6,020.21 | | $6,020.21 | |
| 8/11/25 | Payment | | $35,000.00 | | | $665,659.83 | -$28,979.79 | |
| 9/10/25 | Interest | | | 30.00 | $5,408.49 | | $5,408.49 | |
| 9/10/25 | Payment | | $35,000.00 | | | $636,068.32 | -$29,591.51 | |
| 10/10/25 | Interest | | | 30.00 | $5,168.06 | | $5,168.06 | |
| 10/10/25 | Payment | | $35,000.00 | | | $606,236.37 | -$29,831.94 | |
| 12/10/25 | Interest | | | 61.00 | $10,015.53 | $606,236.37 | | $2,750.00 |
| | | | | Total | | **$619,001.90** | | |
| | | | | Per Diem | | $164.19 | | |

| | | | |
|---|---|---|---|
| Petition Date | 7/1/2024 | Principal | $907,446.75 |
| | | Interest | $15,729.08 |
| | | Attorneys' Fees | $2,750.00 |
| | | | $925,925.83 |
| **Forbearance Rate** | | | **12.00%** |

| Date | Description | Advance (+) | Payment (−) | Days Since Prior | Interest Accrued (+) | Principal Balance | Interest Balance | Fees |
|---|---|---|---|---|---|---|---|---|
| 7/1/24 | Balance Forward | | | | | $907,446.75 | $15,729.08 | $2,750.00 |
| 11/19/24 | Interest | | | 141.00 | $42,650.00 | | $58,379.08 | |
| 11/19/24 | Payment | | $35,000.00 | | | | $23,379.08 | |
| 12/13/24 | Interest | | | 24.00 | $7,259.57 | | $30,638.65 | |
| 12/13/24 | Payment | | $35,000.00 | | | $903,085.40 | -$4,361.35 | |
| 1/14/25 | Interest | | | 32.00 | $9,632.91 | | $9,632.91 | |
| 1/14/25 | Payment | | $35,000.00 | | | $877,718.31 | -$25,367.09 | |
| 2/12/25 | Interest | | | 29.00 | $8,484.61 | | $8,484.61 | |
| 2/12/25 | Payment | | $35,000.00 | | | $851,202.92 | -$26,515.39 | |
| 3/11/25 | Interest | | | 27.00 | $7,660.83 | | $7,660.83 | |
| 3/11/25 | Payment | | $35,000.00 | | | $823,863.75 | -$27,339.17 | |
| 4/16/25 | Interest | | | 36.00 | $9,886.36 | | $9,886.36 | |
| 4/16/25 | Payment | | $35,000.00 | | | $798,750.11 | -$25,113.64 | |
| 5/13/25 | Interest | | | 27.00 | $7,188.75 | | $7,188.75 | |
| 5/13/25 | Payment | | $35,000.00 | | | $770,938.86 | -$27,811.25 | |
| 6/13/25 | Interest | | | 31.00 | $7,966.37 | | $7,966.37 | |
| 6/13/25 | Payment | | $35,000.00 | | | $743,905.23 | -$27,033.63 | |
| 7/10/25 | Interest | | | 27.00 | $6,695.15 | | $6,695.15 | |
| 7/10/25 | Payment | | $35,000.00 | | | $715,600.38 | -$28,304.85 | |
| 8/11/25 | Interest | | | 32.00 | $7,633.07 | | $7,633.07 | |
| 8/11/25 | Payment | | $35,000.00 | | | $688,233.45 | -$27,366.93 | |
| 9/10/25 | Interest | | | 30.00 | $6,882.33 | | $6,882.33 | |
| 9/10/25 | Payment | | $35,000.00 | | | $660,115.79 | -$28,117.67 | |
| 10/10/25 | Interest | | | 30.00 | $6,601.16 | | $6,601.16 | |
| 10/10/25 | Payment | | $35,000.00 | | | $631,716.94 | -$28,398.84 | |
| 12/10/25 | Interest | | | 61.00 | $12,844.91 | $631,716.94 | | $2,750.00 |
| | | | | | **Total** | **$647,311.85** | | |
| | | | | | Per Diem | $210.57 | | |

**Exhibit 4**

<strong>Summary of Disputed Post-petition FFB Interest, Attorneys' Fees and Late Fees</strong>

| | | |
|---|---:|---|
| **FFB Disputed Post-Petition Default Rate Interest & Attorneys' Fees** | | |
| Post-petition Default Interest Loan 1295 (5%) (Note) | $ 515,469.26 | |
| Post-petition Default Interest Loan 1400 (5%) (Note) | $ 59,884.11 | |
| | **$ 575,353.37** | *Additional Disputed Post-petition Interest based on terms of the Notes* |
| | | |
| Post-petition Default Interest Loan 1295 (6.75%) (Forbearance) Fn 1. | $ 695,419.17 | |
| Post-petition Default Interest Loan 1400 (7.25%) (Forbearance) | $ 88,194.06 | |
| | **$ 783,613.23** | *Additional Disputed Post-petition Interest Being Claimed by FFB* |
| | | |
| Attorneys' Fees Claimed by FFB (Loan 1295) | $ 144,579.10 | |
| (Pre-petition from POC) | $ (52,435.70) | |
| **Post-petition Attorneys' Fees** | **$ 92,143.40** | *Disputed Post-petition Attorneys' Fees* |
| | | |
| Loan 1295 Late Fees | $ 3,000.00 | |
| (Pre-petition from POC) | $ - | |
| Post-Petition Late Fees | **$ 3,000.00** | *Disputed Post-petition Late Fees* |
| | | |
| Loan 1400 Late Fees | $ 3,250.00 | |
| (Pre-petition from POC) | $ (2,750.00) | |
| **Post-Petition Late Fees** | **$ 500.00** | *Disputed Post-petition Late Fees* |

Fn. 1 - First Financial Bank is attempting to charge post-petition interest at a rate that is higher than the Default Rate provided under its Notes.

2017 WL 439319

Only the Westlaw citation is currently available.

United States Bankruptcy Court, W.D. Kentucky.

IN RE: Tony Dian PERKINS, Debtor(s)

CASE NO.: 16–10383(1)(12)

|

Signed February 1, 2017

**Attorneys and Law Firms**

Sandra D. Freeburger, Henderson, KY, for Debtor(s).

## MEMORANDUM–OPINION

John A. Lloyd, United States Bankruptcy Judge

**\*1** This matter is before the Court on the Application for Post–Petition Interest and Fees filed by Creditor Branch Banking & Trust Company ("BB & T"). The Court considered BB & T's Application, the Objection to Motion for Post–Petition Interest and Fees filed by Debtor Tony Dian Perkins ("Debtor"), the Memorandum in Support of the Objection to the Application of BB & T for Default Interest and for Attorney's Fees filed by Debtor, the Supplemental Filing in Support of Application for Post–Petition Interest and Fees filed by BB & T, the Second Supplemental for Application for Post–Petition Fees and Interest filed by BB & T, as well as the comments of counsel for the parties at the hearing held on the matter. For the following reasons, the Court will **DENY** BB & T's Application for the payment of Default Interest on its claim against the Debtor and **GRANT** its Application for the payment of its attorney's fees and costs. An Order accompanies this Memorandum–Opinion.

## LEGAL ANALYSIS

Debtor executed three Promissory Notes to BB & T and is in default under the terms of all 3 Notes. The first Note has a principal debt of $679,117.90 with an annual interest rate of 4.25%. The second Note has a principal debt of $224,017.19 with an annual interest rate of 4.75%. The third Note has a principal debt of $559,932.49 with an annual interest rate of 5.69%.

BB & T's claim is secured by Debtor's 251.09 acre farm located in Simpson and Logan Counties in Kentucky. Both Debtor and BB & T acknowledge that the scheduled value of the farm at $2 million exceeds BB & T's claim. The parties also acknowledge that pursuant to the loan documents, the Notes contain a contractual default rate of interest of 5% (contract rate plus 5%).

Under 11 U.S.C. § 506(b), a fully secured creditor, such as BB & T, is entitled to interest on such claims, "... and any reasonable fees, costs or charges provided for under the agreement or State statute under which such claim arose." The purpose of awarding a default rate of interest to an oversecured creditor is to compensate the creditor for any loss resulting from nonpayment under the specific facts of the case. Usually the default interest rate is used as a means to compensate the lender for the administrative expenses and inconvenience in monitoring untimely payments. *In re Vest Associates*, 217 B.R. 696, 701 (Bankr. S.D. N.Y. 1998).

In this case, BB & T's Application seeks an Order awarding it interest on its claim at the contractual default rate (contract plus 5%) on the three BB & T Notes. The Supreme Court determined in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989), that an award of "fees, costs, or charges" is dictated by the terms of the loan agreement. However, the award of interest is not. Bankruptcy courts have construed the *Ron Pair* decision to require analyzing default rates based on the facts and equities

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.          1

of each case. *Matter of Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir. 1994), citing *In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452, 457 (Bankr. D. Md. 1993) and *In re DWS Investments, Inc.*, 121 B.R. 845, 849 (Bankr. C.D. Cal. 1990). Case law establishes that a presumption arises in favor of the contractual rate of interest that is subject to rebuttal based on equitable considerations. The presumption is rebutted where the evidence establishes that the default rate is significantly higher than the pre-default rate without any justification being offered for the difference. *Matter of Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir. 1994). *See, e.g. In re Consolidated Properties Ltd. Partnership*, 152 B.R. 452 (wherein the court refused to award a contract default rate of interest which was 36% higher than the pre-default rate which would have entitled the creditor to recover twice for the same losses) and *In re Hollstrom*, 133 B.R. 535, 539 (Bankr. D. Colo. 1991) (wherein the court rejected a contract default rate of 36% where no evidence was presented to show that this rate was common in the marketplace at the time of the transaction). Other considerations include whether the secured creditor runs a realistic risk of nonpayment, whether the plan proposes a relatively quick orderly liquidation and whether the contract rate of interest was a prevailing market rate at the time of default. *In re W.S. Sheppley & Co.*, 62 B.R. 271, 278–279 (Bankr. N.D. Iowa 1986).

 **\*2**  The evidence before the Court in this case demonstrates that Debtor rebutted the presumption in favor of application of the default rate of interest of an additional 5%. First, by applying the default rate, the rate of interest is doubled on each of the three Notes. In its Supplemental Application, BB & T presented evidence that the prime rate of interest in December 2016 was 3.75% which establishes that its pre-default rate of interest is in line with the prevailing market rate; however, nothing was presented to establish that the additional 5% rate was justified or in line with the prevailing market trends.

According to BB & T's calculation, the non-default rate of interest accrues at a rate of $172.5738 per diem. Application of the non-default rate of interest accrues at $143.3395 per diem. No evidence has been proffered as to why this doubling of the interest rate is anything other than a windfall to BB & T. First, between this case and Debtor's companion partnership cases[1], BB & T received $622,922.52 for crops and $349,498 for ARC payments in the Rolling Ridge Farms case. In the Perkins and Perkins case, BB & T received $1,300,000 less closing costs from the 2015 sale of a farm, $406,040 from the sale of encumbered equipment in 2015 and $237,528 in 2016 from the sale of encumbered farm equipment.

[1]  Rolling Ridge Farms, Case No. 15–10384 and Perkins and Perkins Farms, Case No. 15–10383.

While the above referenced payments to BB & T were from the liquidation of BB & T's collateral, the risk of non-payment of BB & T's claim has been low throughout this case due to its oversecured status. Application of the default rate of interest will materially decrease payment, if not completely eviscerate payments to the unsecured creditors in this case. The equities in this case simply do not favor application of the default rate of interest. For these reasons, the Court **DENIES** BB & T's request for application of the default rate of interest on its claim herein.

The Debtor withdrew her Objection to BB & T's request for attorney's fees for those itemized bills provided. The Court will, therefore, **GRANT** BB & T's request for attorney's fees and reserves its rulings on BB & T's claim in the amount of $9,904.81 for "Other Charges and Premiums", so long as BB & T supplements this portion of its claim with further documentation.

## CONCLUSION

For all the above reasons, the Court **DENIES** BB & T's Application of the Default Rate of Interest on its claim against the Debtor, **GRANTS** its Application for Attorney's Fees and Costs, with the exception of the $9,904.81 of "Other Charges and Premiums". The Court reserves ruling on the "Other Charges and Premiums" until BB & T submits further documentation in support of such claims. An Order incorporating the findings herein accompanies this Memorandum–Opinion.

## ORDER

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  2

Pursuant to the Memorandum–Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Application for Post–Petition Interest and Fees filed by Creditor Branch Banking & Trust Company ("BB & T"), be and hereby is, **DENIED IN PART AND GRANTED IN PART**. BB & T's Application for the Default Rate of Interest is **DENIED**. BB & T's Application for Attorney's Fees and Costs is **GRANTED**. BB & T shall submit a proposed Order on the amount of attorney's fees and costs incurred through December 2016. The Court will consider any additional requests for attorney's fees and costs by motion.

The Court reserves its ruling on BB & T's request for "Other Charges and Premiums" in the amount of $9,904.81 until BB & T submits further documentation in support of such claim within ten days of the date of this Order, at which time the Court will reconsider the request.

**All Citations**

Not Reported in B.R. Rptr., 2017 WL 439319

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   3