

SO ORDERED.
SIGNED 12th day of December, 2025

_____
Charles M. Walker
U.S. Bankruptcy Judge

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Plaza Mariachi, LLC, | Case No. 3:24-bk-02441 |
| | Judge Hon. Charles M. Walker |
| Debtor. | |

## AGREED ORDER GRANTING MOTION TO APPROVE: (I) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; (II) APPROVAL OF PAYMENT OF COMMISSION TO REAL ESTATE BROKER; AND (III) RELATED RELIEF

THIS MATTER CAME ON FOR CONSIDERATION on the *Motion To Approve: (I) Sale Of Real Property Free And Clear Of Liens, Claims And Interests; (II) Approval Of Payment Of Commission To Real Estate Broker; And (III) Related Relief* (the "Motion") filed by Plaza Mariachi, LLC (the "Debtor"), debtor and debtor-in-possession, pursuant to 11 U.S.C. §§ 105(a), 330, 363(b), 363(f) and 363(m), Bankruptcy Rules 2002, 2016 and

1

6004, and Local Rules 2016-1 and 6005-1, asking the Court to approve the Debtor's sale of its real property commonly known as Plaza Mariachi and The Shops at Plaza Mariachi (as more particularly described in the Purchase Agreement (defined below), the "Property") pursuant to the terms and conditions stated in the *Agreement of Purchase and Sale*, dated September 8, 2025 (as amended by that certain *First Amendment to Agreement of Purchase and Sale*, dated as of October 16, 2025, the *Second Amendment to Agreement of Purchase and Sale*, dated as of October 31, 2025, and the *Third Amendment to Agreement of Purchase and Sale*, dated November 4, 2025, the "Purchase Agreement"), executed by the Debtor and HC Plaza, LLC, a Tennessee limited liability company ("Buyer"), free and clear of all liens, claims and interests, with all such liens, claims and interests to attach to the sale proceeds to the same extent, validity and priority as they encumbered the Property. The Debtor also requests final Court approval and payment of the broker's commission and certain undisputed liens from escrow at closing, and waiver of the 14-day stay of the sale approval order under Bankruptcy Rule 6004(h). Unless expressly stated otherwise, capitalized terms used herein shall have the meanings ascribed to such terms in the Motion and Purchase Agreement.

The Motion was filed and served subject to twenty-one (21) days negative notice in accordance with Local Rule 9013-1. Limited objections to the Motion were filed by the U.S. Trustee at Docket 160 (the "UST Objection") and First Financial Bank, N.A. at Docket 161 (the "FFB Objection"). Capital One, National Association ("Capital One") filed a statement of position at Docket 164 in support of the Motion. An initial hearing on the Motion has held on December 3, 2025 (the "Initial Hearing"), and the Court heard

argument from the parties and set a continued hearing for December 17, 2025 at 2:00 p.m. As evidenced by the signatures of counsel for the Debtor, FFB, Capital One, and the U.S. Trustee below, this agreed order (the "Order") resolves the FFB Objection and the UST Objection, and evidences the consent of FFB, Capital One and the U.S. Trustee to the proposed sale of the Property as provided in this Order.

It appearing that due and adequate notice of the Motion has been given to all parties entitled thereto, and that no other or further notice need be given pursuant to all applicable bankruptcy rules; it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; it appearing that the FFB Objection and the UST Objection have been fully resolved by this Order, and that there are no remaining objections to the Motion; after due deliberation, and good sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction to consider the Motion, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a Final Order consistent with Article III of the U.S. Constitution. Venue is proper in this District and in this Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a Final Order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), there is no just reason for delay and immediate effectiveness is warranted as set forth herein.

C.    As evidenced by the certificate of service filed with the Court: (i) proper, timely, adequate, and sufficient notice of the Motion, the Purchase Agreement, and the sale

3

has been provided by the Debtor; (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and in compliance with section, 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9014; and (iii) no other or further notice of the Motion, the Purchase Agreement or the sale is required.

D.     A fair and reasonable opportunity to object to the Motion and the sale has been given to all interested Persons (as defined in section 101 of the Bankruptcy Code) and entities including, but not limited to, the following: (i) all parties who have requested notice in the bankruptcy case; (ii) all applicable federal, state, provincial, and local taxing and regulatory authorities; (iii) all known parties holding or asserting a lien or other security interest in the Debtors' Property; (vi) all of the Debtors' known creditors; and (vii) all parties listed on the Debtor's creditor matrix.

E.     The Debtor has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the sale pursuant to section 363(b) of the Bankruptcy Code.  Such business reasons include, without limitation, the following: (i) the Purchase Agreement constitutes the highest or otherwise best offer for the Property; (ii) the Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Property for the benefit of creditors; and (iii) any other transaction, including, without limitation, pursuant to a Chapter 11 plan, would not have been feasible or yielded as favorable an economic result.

F.     The Buyer is a good faith Buyer under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

G.     The terms and conditions of the Purchase Agreement are fair and reasonable. The consideration of $13,450,000 provided by the Buyer for the Property pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or best offer for the Property, (c) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

H.     The sale of the Property outside a Chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a Chapter 11 plan of the Debtor. The Sale does not constitute a *sub rosa* plan.

I.     The Debtor has good marketable title to the Property and is lawful owner of the Property.

J.     To facilitate the sale of the Property and the resolution of all claims in the case, FFB, Capital One and the Debtor have agreed as follows (the "FFB/Capital One Agreement"):

(1)     FFB consents to the sale and agrees to release its Liens, Claims and Interests against the Property being sold to the Buyer at closing in exchange for the following amounts from the Sale Proceeds (collectively, the "FFB Release Payment"): (a) a revised Closing Payment in the amount of $7,725,000 directly from escrow at the closing of the Sale (the "FFB Closing Payment"); and (b) any excess

5

funds in the Claim Reserve (defined below) after full payment of all allowed priority claims against the Debtor, including administrative expense claims and UST fees. FFB shall have an allowed general unsecured claim against the Debtor for its deficiency in the amount of $595,318.57 (the "FFB Deficiency Claim"). The FFB Closing Payment will be an indefeasible cash payment made directly to FFB at, and as a condition of, the closing of the sale. The FFB Closing Payment will not be subject to any surcharge claim by the Debtor's estate. FFB agrees that the Debtor may use the Claim Reserve described below to pay all other allowed claims in the case, and will not assert any right to any distribution from the Claim Reserve pursuant to any claims (administrative or otherwise) against the Debtor's estate, other than the FFB Deficiency Claim, but only after all administrative and priority claims have been paid. No additional per diem interest or attorneys' fees will be added to the FFB Release Payment or FFB Deficiency Claim provided that the sale closes on or before 12/31/2025. FFB acknowledges that, except any excess available from the Claim Reserve, if any, no estate funds will be available to pay its FFB Deficiency Claim. Nothing contained in this Order or with respect to FFB's agreement regarding the FFB Release Payment affects, reduces, or diminishes FFB's claims, liens and/or other rights against parties other than the Debtor, including without limitation all non-Debtor guarantors and obligors on FFB Loans 1295 and 1400. FFB fully reserves all of its rights and remedies to collect its deficiency from any and all non-Debtor guarantors and obligors and otherwise.

(2)     Capital One consents to the sale and agrees to release its Liens, Claims and Interests against the Property being sold to the Buyer at closing in exchange for a revised Closing Payment in the amount of $4,450,000 from the Sale Proceeds directly from escrow at the closing of the Sale (the "Capital One Release Payment"). The Capital One Release Payment will be an indefeasible cash payment made directly to Capital One at, and as a condition of, the closing of the sale.  The Capital One Release Payment will not be subject to any surcharge claim by the Debtor's estate.  Capital One agrees that the Debtor may use the Claim Reserve described below to pay all other allowed claims in the case, and will not assert any right to any distribution from the Claim Reserve pursuant to any claims (administrative or otherwise) against the Debtor's estate.  No additional per diem interest or attorneys' fees will be added to the Capital One Release Payment provided that the sale closes on or before 12/31/2025.  Nothing contained in this Order or with respect to Capital One's agreement regarding the Capital One Release Payment affects, reduces, or diminishes Capital One's claims, liens and/or other rights against parties other than the Debtor, including, without limitation, all Settling Parties other than the Debtor under the *Order (I) Approving Settlement Agreement Among Mark Janbakhsh, Entities Owned And Controlled By Mark Janbakhsh, And Capital One, National Association, And (II) Granting Related Relief* entered by this Court at Admin. Dkt. 812 in the bankruptcy of the Auto Masters Debtors, Case No. 3:17-bk-07036, the underlying Settlement Agreement, or Capital One's liens securing obligations under the Settlement Agreement (other than the liens in the Property being sold to Buyer).

7

Capital One fully reserves all of its rights and remedies to collect its deficiency from any and all non-Debtor guarantors and obligors and otherwise.

(3)     FFB will retain its liens in the remaining Sales Proceeds after the FFB Closing Payment, the Capital One Release Payment, and the other Closing Payments (as defined in ¶ 25 of this Order) have been made, including the Sale Proceeds used to fund the "Claim Reserve" described below.

(4)     Except as stated in ¶ 26 below, pending the final resolution and dismissal of the Debtor's case, all remaining Sale Proceeds after the Closing Payments have been made, along with all remaining funds in the Debtor's DIP Account shall be the "Claim Reserve" to be used by the Debtor to pay other claims, including, among others, administrative expense claims, as and to the extent those claims are allowed.  The combination of the remaining Sale Proceeds and the cash in the DIP Account will result in an estimated total Claim Reserve at closing in the amount of approximately $337,549.   The Debtor estimates that total unpaid administrative claims for professional fees will total $186,425 and unpaid U.S. Trustee quarterly fees for the case will total approximately $110,700 (for total estimated administrative claims of $297,125) leaving an estimated contingency reserve of $40,424.

(5)     After all Closing Payments have been made, with the exception of any amounts reserved by Escrow Agent under ¶ 26 below, Escrow Agent shall transfer all remaining Sale Proceeds to the IOLTA Trust Account of Debtor's general bankruptcy counsel Burgess Law, LLC, and the Debtor shall transfer all remaining

8

funds in the Debtor's DIP Account to the Burgess Law, LLC IOLTA Trust Account, to be held as the Claim Reserve pending further order of the Court. Burgess Law, LLC shall have no discretion regarding the disbursement of the Claim Reserve. All disbursements of the Claim Reserve shall be expressly approved by Orders of the Court.

(6)      Although FFB will retain its lien on the Sale Proceeds in the Claim Reserve, FFB agrees that the Debtor may use the Claim Reserve to pay all other allowed claims in the case (except any claim held by Capital One), including U.S. Trustee fees and other allowed administrative claims and the Debtor agrees, prior to making such payments, to provide notice to FFB of the identity of the payee and the amount to be paid. To the extent that there are funds remaining in the Claim Reserve after the payment in full of all Closing Payments, all allowed administrative claims (including U.S. Trustee's fees) and all other non-Capital One and Non-FFB priority allowed claims, all such funds will be paid to FFB when the case is dismissed to reduce the FFB Deficiency Claim.

(7)      Capital One and FFB consent to the dismissal of the Debtor's chapter 11 case (and neither Capital One nor FFB will file or support a motion to convert the Debtor's case to Chapter 7) after and provided that all of the following occur: (i) the sale closes, (ii) all Closing Payments, including, without limitation, the FFB Closing Payment and the Capital One Release Payment, have been made in accordance with this Order, (iii) professional fee applications have been filed, approved on a final basis, and paid in full, (iv) any claim objections have been

9

resolved and all allowed non-Capital One and non-FFB priority claims have been paid in full, (v) all U.S. Trustee's fees have been paid, and (vi) any funds remaining in the Claims Reserve have been distributed to FFB.

K.    The Debtor may sell the Property free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal or option to purchase any real property, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against, or with respect to any of the Property, having arisen, existed or accrued prior to and through the Closing, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise and whether arising prior to, on, or after the Petition Date (collectively, "Liens, Claims, and Interests"), except for Permitted Encumbrances as expressly provided in the Purchase Agreement, pursuant to 11 U.S.C. § 363(f)(2) because FFB and Capital One have consented to the sale and all other non-debtor parties with Liens, Claims, and Interests in or with respect to the Property received notice of the Motion and did not object to the Motion, and all such non-objecting lienholders (with the exception of FFB and Capital

Case 3:24-bk-02441    Doc 170    Filed 12/12/25    Entered 12/12/25 14:34:51    Desc Main
Document      Page 10 of 22

One) will be paid the full amount of their allowed claim in satisfaction of their Liens, Claims, or Interests.

L.    Non-Debtor PM Realty Nashville, LLC ("PM Realty") has agreed to pay, and deliver to escrow prior to closing, the following (collectively, the "PM Realty Payments"): (1) the Tenant Security Deposits (estimated in the amount of $44,487); (2) Buyer's portion of prorated rents from the tenants at The Shops at Plaza Mariachi; and (3) an amount sufficient to satisfy and discharge the Notice of Federal Tax Lien, record as Document 20250902-0069708 (Title Commitment Schedule B, Item 27). PM Realty's agreement and consent to this Order is limited to the contents of this ¶ L and ¶ 27 below. PM Realty reserves all of its rights, remedies, claims and defenses with respect to any claims asserted by FFB against PM Realty or other non-Debtor guarantors and obligors post-closing.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.    The Motion is hereby granted and approved as set forth herein.

2.    The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.    The FFB/Capital One Agreement fully resolves the FFB Objection and the UST Objection, is approved in all respects, and is incorporated herein as the order of the

Court. All other parties who received notice of the Sale Motion and did not object are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

4.     The sale, and all of the terms and conditions and transactions contemplated by the Purchase Agreement are hereby authorized and approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to consummate the sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order, and the Debtor shall at all times act in accordance with the terms thereof.

6.     The Debtor is authorized to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Purchase Agreement and consummate the sale pursuant thereto and effectuate the provisions of this Order and the transaction approved hereby, and to take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

7.     The consideration provided by the Buyer to the Debtor pursuant to the Purchase Agreement for the Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform

12

Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

8.     This Order shall be binding in all respects upon (a) the Debtor, (b) its estate, (c) all creditors, (d) all holders of Liens, Claims, and Interests whether known or unknown against or on all or any portion of the Property, (d) the Buyer and all successors and assigns of the Buyer, (e) any trustees subsequently appointed in the Debtor's Chapter 11 case or upon a dismissal or conversion of the case under Chapter 7 of the Bankruptcy Code. This Order and the Purchase Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Buyer, and the respective successors and assigns of each of the foregoing.

9.     The conditions of sections 363(f)(2) and (f)(3) have been met as parties holding valid liens against the Debtor's Property have either expressly consented to the sale (to the extent their respective lien interests are not paid in full), and the Sale Proceeds and Closing Payments contemplated by this Order are sufficient to pay all non-consenting lien holders' interests in full.

10.    Except for Permitted Encumbrances only as expressly provided in the Purchase Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Property (and good and marketable title to such Property) and all of the Debtor's rights, title, and interest therein shall be transferred to the Buyer free and clear of all Liens, Claims, and Interests with all such Liens, Claims, and Interests to attach to the net cash proceeds of the sale (the "Sale Proceeds") in the order of their priority, with the same validity, force, and effect which they now have as against the Property, subject to any

13

claims and defenses, setoffs, or rights of recoupment the Debtor may possess with respect thereto.

11.     Notwithstanding the provisions of Bankruptcy Rule 6004 or any applicable provisions of the Local Bankruptcy Rules, this Order shall not be stayed for 14 days (or any other period of time) after the entry hereof, but shall be effective and enforceable immediately upon entry. Time is of the essence in approving the sale, and the Debtor and the Buyer intend to close the sale as soon as practicable.

12.     The transfer of the Property to the Buyer under this Order is exempt from any transfer or stamp tax under section 1146(a) of the Bankruptcy Code, whether imposed against the Debtor or the Buyer.

13.     Without limiting the other terms of this Order, prior to or upon the Closing of the sale, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their Liens, Claims, and Interests, if any, in the Property as such Liens, Claims, and Interests may have been recorded or may otherwise exist.

14.     Except for Permitted Encumbrances, only as expressly provided in the Purchase Agreement, this Order (a) shall be effective as a determination that, upon the Closing, all Liens, Claims, and Interests existing with respect to the Property prior to the Closing have been unconditionally released, discharged, and terminated as to the Buyer and the Property, and that the conveyances described herein have been effected, and (b) shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

14

governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

15.     Each and every federal, state, and local governmental agency or department or office is hereby directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. Without limiting the other provisions of this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing interests with respect to the Debtor or the Property shall not have delivered to the Debtor or its designee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens, Claims, and Interests which the person or entity has with respect to the Debtor, the Property, or otherwise, then (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Property and (b) the Buyer and/or the Debtor are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, and Interests in, against, or with respect to the Debtor or the Property. This Order is deemed to be in recordable form

sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

16. From and after the date hereof, no creditor of the Debtor or other party in interest shall take or cause to be taken any action that would interfere with the transfer of the Property to the Buyer in accordance with the terms of this Order.

17. This Court hereby retains exclusive jurisdiction, regardless of whether a Chapter 11 plan has been confirmed and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Buyer in accordance with the terms of the Purchase Agreement, (b) resolve any dispute, controversy, or claim arising under or related to the Purchase Agreement, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

18. Nothing contained in any plan confirmed in this Chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

19. The transactions contemplated by the Purchase Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code. The Buyer is a good faith Buyer of the Property and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, any reversal or

16

modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to the Buyer.

20. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate and its creditors, the Buyer, and any of such parties' respective affiliates, designees, successors, and assigns, and the terms and provisions of this Order shall be binding in all respects upon all of the Debtor's creditors, and all persons and entities receiving notice of the Sale Motion, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors, its members, or any examiner or receiver.

21. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

22. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have

17

a material adverse effect on the Debtor's estate. The term "material adverse effect" shall be deemed to include any term or provision that alters, limits, or otherwise amends any of the terms of the FFB/Capital One Agreement set forth in paragraph J of this Order.

24. The Broker's commission in the amount of $200,000 is hereby approved on a final basis allowance, pursuant to 11 U.S.C. §§ 105(a) and 330, and shall be paid to Broker from escrow at closing;

25. Except as stated in ¶ 26 below, the following payments (the "Closing Payments") are authorized and shall be paid to the respective creditors from the Sale Proceeds from escrow at closing:

     a.     The Debtor's portion of Title and Escrow Fees (estimated to be $28,222.00);

     b.     The Broker's Commission to Collier's International in the amount of $200,000.00;

     c.     2023-2025 Real Property Taxes, 3955 Nolensville Pike (estimated to be $446,810.31) (Title Commitment Schedule B, Item 10);

     d.     2023-2025 Real Property Taxes, 3941 Nolensville Pike (estimated to be $257,993.97) (Title Commitment Schedule B, Item 10);

     e.     FFB Closing Payment to FFB in the amount of $7,725,000.00 (Title Commitment Schedule B, Items 11-14);

     f.     Liberty HVAC & Energy Services, Inc. lien (estimated to be $13,102.36) (Title Commitment Schedule B, Items 17 and 22);

     g.     Equipment Finders, Inc. of Tennessee lien (estimated to be

$11,742.97) (Title Commitment Schedule B, Item 18);

      h.     Interstate AC Service LLC lien (estimated to be $24,009.55) (Title Commitment Schedule B, Item 19 and 23);

      i.     Capital One Release Payment to Capital One in the amount of $4,450,000.00 (Title Commitment Schedule B, Items 20 and 21);

      j.     Don Wood Judgment Lien (estimated to be $1,118.66) (Title Commitment Schedule B, Item 24);

      k.     State of Tennessee, Department of Revenue Tax Lien (estimated to be $38,458.73) (Title Commitment Schedule B, Item 25); and

      l.     Mid-South Maintenance of TN, Inc. lien (estimated to be $5,891.82) (Title Commitment Schedule B, Item 26).

26.     If the Debtor provides written evidence to Escrow Agent prior to closing that any of the liens identified in ¶¶ 25(f), (g), (h), (j), (k), or (l) above have either been previously paid or are otherwise disputed, Escrow Agent shall not pay such lien at closing, but shall instead reserve the amount of such lien estimated above in escrow pending either (a) written confirmation from the lienholder that the lien has been satisfied (in which case the reserved amount may be released to the Debtor and added to the Claim Reserve), or (b) further order of the Court (in which case the reserved amount shall be disbursed in accordance with the Court's further order).

27.     PM Realty shall deposit sufficient funds with Escrow Agent prior to closing to pay the PM Realty Payments at closing, including an amount sufficient to satisfy and discharge the Notice of Federal Tax Lien, record as Document 20250902-0069708 (Title

19

Commitment Schedule B, Item 27).

28.     Pending the final resolution and dismissal of the Debtor's case, the Claim Reserve, including all remaining Sale Proceeds after the Closing Payments have been made (excluding any amounts reserved by Escrow Agent pursuant to ¶ 26 above) along with all remaining funds in the Debtor's DIP Account, shall be transferred to and held in the IOLTA Trust Account of Debtor's general bankruptcy counsel Burgess Law, LLC pending further order of the Court.  Burgess Law, LLC shall have no discretion regarding the disbursement of the Claim Reserve.  All disbursements of the Claim Reserve shall be expressly approved by Orders of the Court.  For the avoidance of any doubt, the Escrow Agent is expressly authorized to transfer the remaining Sale Proceeds to the Burgess Law, LLC IOLTA Trust Account after the Closing Payments have been made (less only any amounts reserved pursuant to ¶ 26 above).

29.     Any estate professional or other person or entity, with the exception of the U.S. Trustee for U.S. Trustee Fees, that asserts an administrative expense claim against the Debtor or its estate shall file an appropriate application with the Court on or before January 15, 2026.

30.     The Debtor shall immediately serve copies of this Order on all creditors and parties-in-interest.

> **THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

STIPULATED, AGREED TO, AND APPROVED FOR ENTRY BY:

PLAZA MARIACHI, LLC

By: _/s/Todd A. Burgess_____
Todd A. Burgess (AZ SBN 019013) (*Admitted Pro Hace Vice*)
Janel M. Glynn (AZ SBN 025497) (*Admitted Pro Hace Vice*)
THE BURGESS LAW GROUP
3131 E. Camelback Road, Suite 224
Phoenix, AZ 85016
todd@theburgesslawgroup.com
janel@theburgesslawgroup.com
*Bankruptcy Counsel for the Debtor*

FIRST FINANCIAL BANK, N.A.

By: _/s/ Mark Bogdanowicz (with permission)_
        Mark Bogdanowicz
SPENCER FANE LLP
1000 Walnut, Suite 1400
Kansas City, MO 64106
mbogdanowicz@spencerfane.com
*Attorneys for First Financial Bank, N.A.*

CAPITAL ONE, NATIONAL ASSOCIATION

By: _/s/Robert P. Harris (with permission)_____
        Robert P. Harris
        QUARLES & BRADY LLP
        One Renaissance Square
        Two North Central Avenue, Suite 600
        Phoenix, AZ 85004-2322
        Robert.harris@quarles.com
        *Attorneys for Capital One, National Association*

PAUL RANDOLPH,
ACTING U.S. TRUSTEE, REGION 8

By: _/s/Jeffrey S. Grasl (with permission)_____
        Jeffrey S. Grasl
Trial Attorney for the U.S. Trustee
318 Customs House, 701 Broadway
Nashville, TN 37203

Case 3:24-bk-02441    Doc 170    Filed 12/12/25    Entered 12/12/25 14:34:51    Desc Main
                                Document      Page 21 of 22

PM REALTY NASHVILLE, LLC

By: ___*/s/Mark Mahan Janbakhsh (with permission)*___
Name:  Mark Mahan Janbakhsh
Its:  Manager